## SUPERIOR WATER, LIGHT & POWER COMPANY *v.* CITY OF SUPERIOR ET AL.

ERROR TO THE SUPREME COURT OF THE STATE OF WISCONSIN.

No. 57. Argued October 9, 1923.—Decided November 12, 1923.

1. Where a municipality, with express power from the legislature, enters into a contract whereby in consideration of the construction, maintenance and operation of a water system by a water company it grants the company the exclusive right to maintain and operate for a specified period and agrees to extend the term when it expires or to purchase the entire plant at a price to be determined by capitalizing the net earnings of the year preceding the purchase, the rights acquired by the company are rights of property which are not subject, under the Constitution, to be impaired by subsequent legislation attempting to substitute for the company's franchises an "indeterminate permit" to continue in force until the municipality shall elect to purchase upon terms to be fixed by a state commission. P. 135.

---

2. A power to alter or repeal incorporation acts, reserved by state constitution, will not be held applicable to property rights of a corporation acquired by contract with a city, when not clearly so construed by state decision antedating the contract. *Id.*
174 Wis. 257; 176 id. 626, reversed.

ERROR to a judgment of the Supreme Court of Wisconsin for the City in a suit by the Water Company to restrain the City from condemning the company's plant, and praying specific performance of the City's contract to purchase it or extend the company's franchise.

*Mr. Frank B. Kellogg,* with whom *Mr. Harry L. Butler* was on the brief, for plaintiff in error.

*Mr. L. Hanitch* and *Mr. T. L. McIntosh,* with whom *Mr. C. M. Wilson* was on the briefs, for defendants in error.

MR. JUSTICE MCREYNOLDS delivered the opinion of the Court.

Since 1848 the Constitution of Wisconsin has contained the following clause. "Art. XI, Sec. 1. Corporations without banking powers or privileges may 'be formed under general laws, but shall not be created by special act, except for municipal purposes, and in cases where, in the judgment of the legislature, the objects of the corporation can not be attained under general laws. All general laws or special acts, enacted under the provisions of this section may be altered or repealed by the legislature at any time after their passage."

Chapter 359, Private Laws of Wisconsin 1866, incorporated plaintiff in error's predecessor, the Superior Water Works Company, and empowered it to make "any agreements, contracts, grants and leases for the sale, use and distribution of water as may be agreed upon between said company and any person or persons, associations and

corporations, and with the town of Superior, or neighboring towns; or the said company itself may take and use the surplus water for manufacturing and other purposes; which said agreements, contracts, grants and leases shall be valid and effectual in law."

On October 15, 1887, in order to provide fire protection and secure pure and wholesome water, and in consideration of benefits to accrue therefrom, the Village of Superior, a municipal corporation, by ordinance, granted to Superior Water Works Company, its successors and assigns, for a period of thirty years, the privilege of establishing, maintaining and operating a complete system of water works. The ordinance specified the duties and obligations of the parties and, among other things, provided, that the village would abstain for thirty years from granting the right to lay water pipes in its streets to any other party and that the main source of water should be Superior Bay; but if the village at its expense should secure an indefeasible right to lay pipes across Minnesota Point in the State of Minnesota, etc., the company would take water from Lake Superior. And further that " at the expiration of the said thirty years, should the said village refuse to grant to the said Superior Water Works Company, its successors or assigns, the right to continue and maintain said system of water works for another term of thirty years, upon the said terms and conditions as may exist between the said village or city and the said Superior Water Works Company, at the expiration of the 1st thirty years, in and upon the public grounds and streets of the said village and to supply the said village and the inhabitants thereof with water on reasonable terms, then and in such case, the village shall purchase from said Superior Water Works Company, its successors or assigns, said system of water works and the property connected therewith, at a fair valuation as provided for in section XIII."

Section XIII provided for arbitrators to determine the actual value of the plant, exclusive of privileges granted by the village, not to exceed what it would cost to construct the same, etc. Section XIV: "Within thirty days after the passage of this ordinance said Superior Water Works Company may file with the village clerk its acceptance thereof, duly acknowledged before some authorized officer and from and after the filing of said acceptance this ordinance shall have the effect of and be a contract between the village of Superior and the Superior Water Works Company and shall be the measure of the rights and liabilities of said village as well as of said company, and in case such acceptance is not so made and filed within thirty days after the passage of this ordinance, the village board shall have the right to repeal the same."

The corporation accepted the ordinance, constructed the plant and many extensions, spent large sums in connection therewith; and long continued to operate it

In March, 1889, the territory constituting the Village of Superior was incorporated as the City of Superior. The charter declared that "all franchises heretofore granted, or contracts entered into, by the village of Superior, shall continue and remain in force in accordance with the terms thereof, as if the same had been granted or entered into by said city of Superior." (C. 152, Laws 1889.) It further empowered the city "to provide for the purchase, construction, maintenance and operation of water-works for the supply of water to the inhabitants of the city, and to supply such city with water for fire protection and other purposes; and to secure the erection of water-works, said city may, by contract or ordinance, grant to any person, persons, company or corporation, the full right and privilege to build and own such water-works, and to maintain, operate and regulate the same; and in doing so, to use the streets, alleys and bridges of the city in laying and maintaining the necessary pipe lines and hydrants for such term of years and on such conditions as may be prescribed

by such ordinance or contract; and may also, by contract or ordinance, provide for supplying from such water-works, the city with water for fire protection and for other purposes, and also the inhabitants thereof with water for such term of years, for such price, in such manner, and subject to such limitations as may be fixed by said contract or ordinance."

October 1, 1889, with the express assent of the Superior Water Works Company and in consideration of the waiver of certain rights by the latter, the City of Superior amended section XIII, Ordinance of October 15, 1887, so as to provide that, if purchased, the price to be paid for the water works plant should be ascertained by capitalizing the net earnings of the preceding year at five per centum.[1] Sections II and III of this ordinance follow.

---

[1] Section I. Ordinance number 5 of the general ordinances of the village (now city) of Superior, entitled " an ordinance amending and reenacting section XIII of an ordinance authorizing the Superior Water Works Company, its successors or assigns, to construct, operate and maintain a system of water works in the village of Superior, Douglas County, Wisconsin, and contracting with said company for a supply of water for the use of said village and the inhabitants thereof, and defining their rights, privileges and powers," is hereby amended by striking out of said ordinance all of said ordinance after the words " Section XIII," where the said words " Section XIII " occur, in the thirteenth line thereof and inserting in lieu thereof the following:

This ordinance is passed upon the express condition that at the expiration of twenty years after the date of the passage of this ordinance and of every fifth year thereafter, the city of Superior may, at its option, purchase from the said Superior Water Works Company, its successors or assigns, the entire plant of the said Superior Water Works Company, its successors or assigns, and including all franchises theretofore granted to said Superior Water Works Company, its successors or assigns, by the village or city of Superior, by paying therefor, in cash, an amount of money, of which the net earnings of said Superior Water Works Company, for the year next preceding the purchase thereof, by said city, shall be five per centum. Such purchase shall be made in the following manner, to-wit: The common

74308°—24——9

"Section II. This ordinance is passed upon the consideration to the city of Superior that the said city is hereby released and relieved from the duty, cost and expense of procuring, for said Superior Water Works Company, the valid and indefeasible right to extend and lay its pipes across the bay of Superior and across Minnesota Point, to the shores of, and into Lake Superior, as provided in section II of said ordinance number one of the general ordinances of the village of Superior and that all that part of said section No. II, commencing with the word 'provided' in the twentieth line thereof, down to and including the word 'completed' in the sixty-second line thereof,

---

council at its first regular meeting after the expiration of said twenty years, or of any fifth year thereafter, may pass an ordinance declaring its intention to purchase said plant and franchises appropriating the necessary funds therefor and directing the city clerk of said city, to serve upon said Superior Water Works Company, its successors or assigns, a copy of said ordinance, together with a notice that at the expiration of one year from the date of the service of said notice, the said city will pay to said Superior Water Works Company, its successors, or assigns, the price of said plant and franchises, determined as by this ordinance provided, and will assume possession of said plant and franchises. Commencing with the day following the date of the service of such notice, the said Superior Water Works Company, its successors or assigns, shall keep an accurate account of all receipts and disbursements of said company, in a set of books kept expressly for that purpose and for no other, which said books shall at the expiration of each quarter year thereafter be open to the inspection of the city comptroller of said city. At the expiration of one year from the date of the service of the notice above provided for, the said Superior Water Works Company, its successors or assigns, shall submit to the comptroller of said city, the said books of account, and the price to be paid for said plant and franchises shall be determined therefrom, as hereinbefore provided and upon the payment, in full, of said price, the said Superior Water Works Company, its successors or assigns, shall surrender to said city its said plant and franchises complete. The words "net earnings" as used in this ordinance, shall mean the gross earnings of said water works, less the actual operating expenses thereof.

is hereby repealed. And this said ordinance is passed upon the further consideration to the city of Superior, that by the acceptance hereof the said Superior Water Works Company binds itself, its successors and assigns, to obtain at its own expense an adequate supply of good and wholesome water for domestic and public purposes from said Lake Superior and to furnish the same to the inhabitants of said city and to said city as provided in said ordinance number one as hereby amended within two years from the acceptance of this ordinance by said Superior Water Works Company.

" Section III. This ordinance is passed with the consent of the Superior Water Works Company and upon filing a written acceptance by it with the city clerk of the said city of Superior the said ordinance with all other ordinances of said city or the village of Superior granting to the said Superior Water Works Company any rights or franchises shall be and become and is hereby made a binding contract as so amended and modified."

In compliance with the foregoing ordinance and agreement the supply lines of the water system were extended across Minnesota Point, in the State of Minnesota, and into Lake Superior. The company also acquired a parcel of land on that point and there installed wells, machinery and equipment which became an essential part of the system.

On November 1, 1889, the Superior Water Works Company sold and transferred its plant with all appurtenant rights and privileges to plaintiff in error, the Superior Water, Light and Power Company. Three ordinances amended the grant of 1887 (in ways not now necessary to detail) in 1889, 1896 and 1899. Two of these provided for and received express acceptance by plaintiff in error.

In 1907 the Wisconsin Legislature enacted the Public Utility Law (c. 499, Laws 1907, §§ 1797m–1 to 1797m–109, Wis. Stats.), which created the Railroad Commis-

sion, a regulatory body, and authorized public utilities to surrender existing franchises and accept in lieu thereof "indeterminate permits." Chapter 596, Laws 1911, repealed the optional feature of the statute of 1907 and directed that every license, permit or franchise granted by the State or by any town, village or city to any corporation authorizing the latter to operate a plant for furnishing heat, light, water or power, etc., etc., "is so altered and amended as to constitute and to be an 'indeterminate permit' within the terms and meaning of sections 1797m–1 to 1797m–108, inclusive, of the statutes of 1898, and subject to all the terms, provisions, conditions, and limitations of said sections 1797m–1 to 1797m–108, inclusive, and shall have the same force and effect as a license, permit, or franchise granted after July 11, 1907, to any public utility embraced in and subject to the provisions of said sections 1797m–1 to 1797m–108, inclusive, except as provided by section 1797m–80." One of the provisions to which reference is made gives the municipality the right to purchase upon terms to be fixed by the State Railroad Commission.

The statute (§ 1797m–1) declares the term "'indeterminate permit' . . . shall mean and embrace every grant, directly or indirectly, from the state, to any corporation, company, individual, association of individuals, their lessees, trustees or receivers appointed by any court whatsoever, of power, right or privilege to own, operate, manage or control any plant or equipment or any part of a plant or equipment within this state for the production, transmission, delivery or furnishing of heat, light, water or power, either directly or indirectly, to or for the public, which shall continue in force until such time as the municipality shall exercise its option to purchase as provided in sections 1797m–1 to 1797m–109, inclusive, or until it shall be otherwise terminated according to law."

Plaintiff in error has not voluntarily submitted to the Public Utility Law.

On October 15, 1917, the prescribed thirty-year limitation expired and plaintiff in error requested the City of Superior either to grant further right to maintain the system of water works or to purchase the same as provided by the ordinance of 1887 as amended in 1889. The city failed to make the grant; denied its obligation to purchase; and took steps under provisions of §§ 1797m–1 to 1797m–109, Wisconsin Statutes, to condemn the entire plant. Thereupon plaintiff in error instituted the present cause against the city, its mayor and councilmen. The complaint sets out the foregoing facts, alleges repudiation of the obligation to purchase and the steps taken for condemnation, and asks a decree requiring the city specifically to perform its agreement, for an injunction restraining further efforts to condemn and for general relief.

The trial court overruled a general demurrer, but this action was reversed by the Supreme Court, 174 Wis. 257, which held that the Act of 1907 (c. 499) as amended in 1911 was permissible under the reserved power to alter, amend or repeal acts providing for formation or creation of corporations; and that it had substituted an "indeterminate permit" for the rights granted to the plaintiff in error by the municipality. "A new franchise was therefore granted to the defendant in lieu of its original franchise by the enactment of c. 596, Laws 1911. Thereafter its franchise was that of the indeterminate permit, and it was subject to the provisions of the public utility law. This also was its franchise on October 1, 1917, when it is claimed its original franchise expired. The public utility law had superseded everything of a franchise nature embodied in the original ordinance granted to it by the village of Superior and the subsequent and succeeding amendments thereto." And also that it was immaterial whether or not a contract between the city and the water company resulted from the clause of the original

ordinance providing for extension of the grant or pur-
chase after thirty years, because " even though it be
considered as a contract, we think it gives rise to no obli-
gation on the part of the city to purchase the plant ac-
cording to its terms."

The court further said—

" The manifest purpose of the provision was to insure
the Water Company one of two things: either a renewal of
its franchise for another period of thirty years or a sale
of its property in case such franchise be not renewed.
The franchise called for was one having ' the same terms
and conditions as may exist between the said village or
city and the said Superior Water Works Company at the
expiration of the first thirty years.' The franchise which
it had at that date was the indeterminate permit. That
was either its franchise or it had none. That was a
continuing franchise. It was indeterminate as to time.
It was not limited to thirty years or any other period.
Consequently there was no occasion for the city to ' grant
to the said Superior Water Works Company, its successors
or assigns, the right to continue and maintain said sys-
tem of waterworks.' It already had that right. There
was therefore no breach of this part of the alleged con-
tract on the part of the city. Until there was a breach
of this provision of the contract, no obligation on the part
of the city to purchase according to the terms of the con-
tract arose. It seems plain that the position of the Water
Company is not helped by construing this provision of the
ordinance as a contract made by the city in its proprietary
capacity. The conditions precedent to an obligation on
the part of the city to buy under the terms of the contract
have not come to pass, and the city has in no manner
become obligated to carry out the feature of the contract
which is sought to be enforced in this action."

Considering the opinions of this court, it seems clear
enough that a valid contract resulted from the dealings

between the City of Superior and plaintiff in error whereby each became obligated to do certain specified things. The company agreed to construct, maintain and operate an adequate water works system. The city obligated itself to recognize the company's exclusive right to maintain and operate the system for a definite period— thirty years; and also to purchase the entire plant at a price fixed in the manner specified if at the conclusion of such period it should refuse to grant an extension. The rights so acquired by plaintiff in error were property. *Pearsall* v. *Great Northern Ry. Co.,* 161 U. S. 646; *Detroit* v. *Detroit Citizens' St. Ry. Co.,* 184 U. S. 368, 384; *Cleveland* v. *Cleveland City Ry. Co.,* 194 U. S. 517, 536; *Vicksburg* v. *Vicksburg Waterworks Co.,* 206 U. S. 496; *Louisville* v. *Cumberland Telephone Co.,* 224 U. S. 649, 664; *Grand Trunk Western Ry. Co.* v. *South Bend,* 227 U. S. 544, 556; *Owensboro* v. *Cumberland Telephone Co.,* 230 U. S. 58, 73; *Old Colony Trust Co.* v. *Omaha,* 230 U. S. 100, 117; *Detroit United Ry.* v. *Michigan,* 242 U. S. 238, 253; *Northern Ohio Trac. Co.* v. *Ohio,* 245 U. S. 574, 585; *Columbus Ry. & Power Co.* v. *Columbus,* 249 U. S. 399, 407.

Concerning the relation between the parties the court below declared, "the franchise of the Water Company, which enables it to pursue its business of supplying water to the city of Superior and its inhabitants, is a contract between it and the state." But it held the legislature had power to change this contract under the reservation permitting alterations, in § 1, Art. XI, of the State Constitution, and that the Act of 1911 did modify the contract by substituting for rights thereby secured an "indeterminate permit."

Through its contract with the city the water company acquired valuable property rights. They were not directly created by any statute enacted under § 1, Art. XI, of the State Constitution, but were the outcome of agree-

ment with a fully empowered corporation. They did not arise from the mere exercise of a governmental function legislative in character, but from contract expressly authorized by the legislature. None of the decisions of the Supreme Court of Wisconsin prior to 1889 to which we have been referred [2] construes the reservation in the State Constitution as having the extraordinary scope accorded to it below; and certainly in the absence of some very clear and definite pronouncement we cannot accept the view that it then had the meaning now attributed to it.

As late as 1909, in *State ex rel. Northern Pacific Ry. Co. v. Railroad Commission,* 140 Wis. 145, 157, that court announced, " The right to alter or repeal existing charters is not without limitation when the question of vested property rights under the charter is involved. The power is one of regulation and control, and does not authorize interference with property rights vested under the power granted. . . . The reserve power stops short of the power to divest vested property rights, and is embodied in the state constitution for the purpose of enabling the state to retain control over corporations, and must be construed in connection with the other provision of the constitution to the effect that private property shall not be taken for public use without compensation. It follows, therefore, ' that where, under power in a charter, rights have been acquired and become vested, no amendment or alteration of the charter can take away the property or rights which have become vested under a legitimate exercise of the

[2] *Madison, Watertown & Milwaukee Plankroad Co.* v. *Reynolds,* 3 Wis. *287; *Pratt* v. *Brown,* 3 Wis. *603; *Nazro* v. *Merchants' Mutual Insurance Co.,* 14 Wis. *295; *Kenosha, Rockford & Rock Island R. R. Co.* v. *Marsh,* 17 Wis. *13; *Whiting* v. *Sheboygan & Fond du Lac R. R. Co.,* 25 Wis. 167; *Wisconsin* v. *Milwaukee Gas Light Co.,* 29 Wis. 454; *West Wisconsin R. R. Co.* v. *Board of Supervisors of Trempealeau County,* 35 Wis. 257; *Attorney General* v. *Railroad Companies,* 35 Wis. 425.

'powers granted.' *Commonwealth* v. *Essex Co.,* 13 Gray, 239." See also *Water Power Cases,* 148 Wis. 124, 136.-

The integrity of contracts—matter of high public concern—is guaranteed against action like that here disclosed by § 10, Art. I, of the Federal Constitution, "No State shall . . . pass any . . . law impairing the obligation of contracts." It was beyond the competency of the legislature to substitute an "indeterminate permit" for rights acquired under a very clear contract. *Vicksburg* v. *Vicksburg Waterworks Co.,* 206 U. S. 496; *Detroit United Ry.* v. *Michigan,* 242 U. S. 238, 253. The erroneous conclusion concerning this federal question led to the decree below. Accordingly it must be set aside and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed.*