WISCONSIN POWER & LIGHT COMPANY, Appellant, vs. PUBLIC SERVICE COMMISSION, Respondent.

*June 5—September 10, 1935.*

106

For the appellant there was a brief by *Schubring, Ryan & Petersen,* and oral argument by *William Ryan* and *Ralph E. Axley,* all of Madison.

For the respondent there was a brief by the *Attorney General, H. T. Ferguson,* special assistant attorney general, and *Alvin C. Reis,* chief counsel for the Public Service Commission, and oral argument by *Mr. Reis* and *Mr. Ferguson.*

The following opinion was filed June 24, 1935:

FOWLER, J. As we understand its contention, the plaintiff is not objecting to the aggregate value fixed by the commission for the physical property taken over by the village and the "going value" of the utility, but is only contending that the commission erred in not including, in the compensation awarded, damages for the diminution in value of its property as a whole by reason of the taking of the portion taken. It urges that the proceeding is a condemnation proceeding, and that the same measure of damages therefore

should be applied that is applied in the condemnation of property for railroad or highway or other public purposes which admittedly is the difference between the value at the time of taking of the whole property of which the property taken is a part and the value of the remaining property as a whole after the taking of the portion taken.

From this as its premise, the plaintiff argues, in effect, that if the municipalities it serves as local utilities progressively take over the distributing systems therein, it will eventually be deprived of all of its property except its main steam-power plants and its hydroelectric plants, the total value of which is about $17,000,000; that with its distribution systems all gone, these plants will be left on its hands with nothing to serve, will be rendered valueless, and it will thus be deprived of its property without just compensation and without due process of law, contrary to the terms of sec. 13, art. I, of the state constitution and the Fourteenth amendment to the constitution of the United States. It argues further, that to avoid this dire result, each municipality should pay such proportionate part of the total value of its several power plants and transmission lines that will thus be rendered valueless, as is fixed either by the ratio of the value of the distributing system therein to the total value of all of the plaintiff's distributing systems, or the ratio of the consumption of electrical energy by the local utility to the total consumption by all of its local utilities. On this or some other hypothetical basis the plaintiff contends that under the evidence introduced before the commission the village of Brooklyn should pay at least $56,000 as compensation in addition to the $10,000 awarded by the commission.

The respondent contends that the proceeding before the commission is not a condemnation proceeding, but a purchase, and that the compensation recoverable rests upon a contractual basis. It argues that the statute expressly provides that the plaintiff shall be compensated for the property

taken, and that such loss, if any, as it may suffer in the future through further acquisition by municipalities of the local utility therein and their property will be a mere loss of business, the risk of which the plaintiff took when it purchased the local utility and property. The respondent further argues that had the village of Brooklyn taken over the property of the original grantee of the indeterminate franchise, it would have been required to pay only the value of the property taken; and that the plaintiff cannot add to the amount it must pay by tying the local distribution system up to its unified power and transmission system. The respondent further argues that villages like Brooklyn, with a population of about four hundred, and a local assessed property valuation of $360,000, manifestly cannot pay $66,000 for the privilege of taking over the local utilities operating therein. This would render acquisition by such municipalities impossible, deprive them of a plain statutory right, and defeat the plain import and intent of the statute.

As to the respective contentions of the parties as to the nature of the proceeding involved, it is perhaps sufficient to say that the proceeding is not necessarily purely a condemnation proceeding, imposing the precise measure of compensation ordinarily allowed in such proceedings, or purely a purchase with the measure of compensation involved resting entirely on a contractual basis. The first case dealing expressly with the nature of the proceeding involved in the acquisition under the public utility law by a municipality of the property of a local utility is *Connell v. Kaukauna,* 164 Wis. 471, 159 N. W. 927, 160 N. W. 1035. It was there declared to be in the nature of a condemnation proceeding; that the acceptance of an indeterminate franchise is a waiver by the utility of the jury verdict prescribed by sec. 2, art. XI, of the state constitution, which makes a finding by a jury of the necessity of taking prerequisite to a municipality's taking of property for a public purpose; and that the power

exercised by the municipality is that of eminent domain. The court concluded, page 488:

". . . That the proceeding . . . is in the nature of a condemnation proceeding, and the effect of the proceeding is therefore to be determined in accordance with the laws governing the exercise of the power of eminent domain. In arriving at this determination we have considered the fact that the proceeding is denominated a 'purchase' in the act itself, and that in some aspects the rights of the parties are contractual and are thus spoken of in prior decisions of this court."

In the earlier case of *Oshkosh W. W. Co. v. Railroad Comm.* 161 Wis. 122, 152 N. W. 859, the taking of a system of waterworks was spoken of as condemnation. *Superior W., L. & P. Co. v. Superior,* 174 Wis. 257, 181 N. W. 113, 183 N. W. 254, assumes that the taking is condemnation, and it was so considered by the supreme court of the United States on review in 263 U. S. 125, 44 Sup. Ct. 82. In none of these decisions was the point discussed or especially considered. In the case of *State ex rel. Wisconsin T., L., H. & P. Co. v. Circuit Court,* 162 Wis. 234, 155 N. W. 139, which is hereinafter referred to as the *Menasha Case,* the power of Menasha to take over the property of the relator situated therein was contested by the relator. The relator owned an electric generating plant in Appleton from which it supplied current to the municipalities and inhabitants of Appleton, Neenah, and Menasha. The franchise to serve Menasha and its inhabitants was granted in 1904. By virtue of a statute passed in 1911, this franchise became an indeterminate franchise. The power of Menasha to take over the property was upheld. The proceeding involved was spoken of by the court as "condemning the property" taken. The only difference between the acquisition there involved and the one involved here is that in that case the verdict of a jury as to necessity had to be taken, because the original franchise was granted before the utility law declared the

franchises of all existing local utilities to be "indeterminate permits." Property of the utilities existing at the time all franchises were made indeterminate could not be acquired under the constitutional provision cited without the verdict of a jury. Franchises granted thereafter were accepted subject to the act, which did away with the jury verdict, and by their acceptance the utilities waived the jury trial. In all other respects the acquisition of a utility by a municipality in the two classes of cases is precisely the same. In the *Menasha Case,* a jury had found that "public necessity required the taking," and the decision of this court reviewed the judgment of the circuit court entered upon that verdict. Thus the only question involved in that case was the power of Menasha to acquire the property of the relator "actually used and useful for the convenience of the public" located within Menasha. This court expressly declined to consider whether the relator could recover "severance damages" in the subsequent proceedings by the Railroad Commission to determine the "just compensation" to be awarded the relator, as the question was not before it.

The respondent in support of its contention lays great stress upon a statement in the opinion in the *Menasha Case* that "the transaction [acquisition] amounts to a *purchase.*" The appellant stresses a statement of the opinion made in close connection with the other that the property of the local entity "is subject to *condemnation* separately though used and owned in connection with that of other utilities." Twice again, on the same page, 240, the opinion designates the proceeding as condemnation. These statements obviously were not intended to conflict. It is manifest that the court considered the proceeding to be in some of its features of the nature of a purchase, and in others in the nature of a condemnation. The consequences in any particular of the dual nature indicated were not considered by the court. Two names were used to designate the same proceeding, and it is

of no consequence that the court used one or the other, or both, of the names. The court was then and we are now dealing with a thing, not with names, and it is immaterial what the thing was or is called. The only point decided in the *Menasha Case* is that the property of a utility within a municipality is a separate entity, and it can be acquired by the municipality although it is tied to and used in connection with other utilities. The unit dealt with is the local entity, not the whole property of which the local entity is a part.

The idea that the unit involved under the utility law is the local entity, not the entire property of which the local entity forms a part, was again declared in *Eau Claire v. Wisconsin-Minnesota L. & P. Co.* 178 Wis. 207, 189 N. W. 476. Although it was a rate case, the situation there involved was analogous to that in the instant case. Several separate hydroelectric plants were connected to supply the current carried by a high-tension transmission line that transmitted current to cities in Minnesota and to several cities in Wisconsin. The Wisconsin cities were all connected into a loop of the system, and a single rate was established by the Railroad Commission for each of the cities in the loop. The court held that this was erroneous. That in rate making the unit considered is the local entity, not the loop system supplying those entities. In arriving at this conclusion, the opinion states that the great development of water powers devoted to creating hydroelectric current and their combination into a single unit for power transmission was not foreseen when the utility law was enacted, which is equally true of the transmission system involved in the instant case; that notwithstanding this great development, the utility law has not been changed; that the utility law as framed contemplated the two entities involved to be the municipality and the local utility; that as the law has not been changed, the unit to be considered in rate making, as was held in the *Menasha Case* respecting acquisitions by municipalities, is the local entity,

not the entity composed of the aggregate of the transmission line of the loop involved and the generating plants connected with it. It is said in the opinion, page 220, that—

". . . whether or not a city adjacent to the power is to be deprived of the advantage of its location and made to bear the burden of a portion of the expense of carrying it to a distant city is a question of public policy which should properly be decided by the legislature. It should not be established either by the railroad commission or by the court. . . . Under existing statutes the commission is required to treat the municipality as a unit and to base its rate upon the cost to the utility of serving the individual municipality, rather than the average cost of serving many distinct and scattered municipalities."

With like reason may it be said, whether a municipality desiring to acquire a local utility is to be deprived of the advantage of taking it over on making just compensation for what is "actually used and useful for the convenience of the public" and made to bear in addition the burden of a proportionate part of the diminution in value of the total property involved in bringing current to the municipality from far-distant and widely-separated sources of power is a question of public policy that should be declared by the legislature. Under the existing statutes the commission is required to treat the local entity as the unit and to award compensation upon the basis of the value as a going concern of the property taken that is "actually used and useful for the convenience of the public." This is the language of the statute, and expressly fixes the measure of the compensation. The measure of compensation fixed by the statute cannot be increased by the owner by taking the current consumed by the local utility from its high-tension line on the theory that the property taken over is only a part of an entire unit comprised of local distributing systems, transmission lines, and generating plants. The statute determines the unit to be

considered in fixing compensation, just as it determines the unit in fixing rates.

That the statute fixes the measure of compensation to be awarded when a municipality acquires a local utility is inferentially if not directly held in *Appleton Water Works Co. v. Railroad Comm.* 154 Wis. 121, 142 N. W. 476. In the proceeding there involved the city was taking over a waterworks system under the provisions of the utility law which were then the same as now. It was contended by the waterworks company that as the proceeding was condemnation the award of the commission should have provided that the costs of its suit in contesting the amount of the award should be borne by the city, just as the costs must be borne by a railroad company in a suit by a landowner to secure the just compensation to which he was entitled for the land taken, as held in *Stolze v. Milwaukee & L. W. R. Co.* 113 Wis. 44, 88 N. W. 919. The court held that such costs could not be included in the just compensation to be awarded because the statute did not provide therefor. The opinion in the *Appleton Case, supra,* page 135, states:

"The landowner [in the *Stolze Case*] consented to nothing. . . . When, however, a public utility company elects to surrender its franchise and receive an indeterminate permit under the utilities law, it consents . . . that it will abide by the provisions of the utilities law as to the method of securing its compensation. In effect, it embodies all the provisions of the utilities law bearing on the subject into its consent, and agrees to be bound by them. Whether the proceedings by which the compensation is ascertained under the utilities law be called condemnation proceedings or not is a matter of little moment. The property owner has voluntarily consented to be bound by them."

It is later stated in the opinion that "the words 'just compensation' as used in the law [sec. 197.05 (2), Stats.] plainly mean fair and reasonable value at the time of the taking."

These statements of the court plainly imply that even if the proceeding be considered as condemnation, by reason of the acceptance of the indeterminate permit the measure of compensation is as fixed by the statute.

We perceive no irreconcilable difference between the holdings of the court in the *Appleton Case* and the *Kaukauna Case, supra.* While the *Appleton Case* points out a particular in which the proceeding is contractual, in that the consent of the owner has bound him to accept the compensation prescribed by the statute, it states that this follows even though the proceeding be considered one of condemnation. The *Kaukauna Case,* while designating the proceeding as in the nature of condemnation, recognizes that the rights of the parties are contractual in some respects. It points out that the proceeding lacks the characteristics of a purchase because no bargaining as to price or terms or conditions is permitted, and it comprises elements of condemnation because the taking is for a public purpose, and the property is by the statute transferred entirely free from all liens existing at the time it is taken, and this may not be accomplished by the immediate parties to the transfer, but only through condemnation proceedings. The *Kaukauna Case* does not disavow or repudiate the idea of the *Appleton Case* that the measure of damages in the proceeding before the commission is limited by the statute to the value of the property taken.

The plaintiff also urges that if the item of damages above mentioned may not be included in the compensation to be awarded, it is entitled to be paid as compensation the cost of removing its high-tension line and the facilities for transforming the high-tension current and transferring it to the distribution lines, and the value of its substation comprising these facilities. From this substation a high-tension line extends to Belleville and other communities, another to Oregon and other communities, and another to Evansville and other communities. Two rural lines besides the two-customer

line determined by the commission to be taken over by the village, also extend from the substation. The commission by its order provided, in effect, that if the village should not take current from the plaintiff to supply its distributing system, the commission would then determine and award to the plaintiff the cost of removing the facilities for transforming the high-tension current and transmitting it to the street lighting line of the village, upon the theory that no removal costs could be allowed unless the removal took place. This determination, as far as it goes, seems to be favorable to the plaintiff, and the village is not complaining of it. It is not certain that the removal thus provided for will ever occur. The plaintiff is in the business of furnishing current wholesale to other utilities, as well as retailing it, and for all that appears it will furnish current to the village. The village has made no provision or determination for construction of a generating plant of its own. Presumably it will not construct such a plant if the plaintiff will supply it the needed current at a rate it and the Public Service Commission considers reasonable. It would seem that an arrangement should be made between the parties as an economic proposition, although the economics of the proposition is no affair of the court, and the court does not attempt and disavows power to require it. Upon this phase of the case we do not perceive that the plaintiff is prejudiced by the refusal of the commission to make an absolute allowance and direct immediate payment of the removal costs tentatively allowed by the commission.

As to the other removal costs contended for by the plaintiff, we perceive no basis for their allowance under the language of the statute above quoted, limiting compensation to the property "actually used and useful for the convenience of the public."

The plaintiff also contends for allowance of a proportional part of the overhead and maintenance costs of the district of

which in the plaintiff's set-up the village is a part. These are no part of the property acquired by the village and are outside the statutory scope of compensation.

The plaintiff objects to the provision respecting joint use by the plaintiff and the village of five poles carrying plaintiff's high-tension transmission line, on the ground that the commission has no power to require such use. Sec. 196.04, Stats., provides that for a reasonable compensation every utility shall, when irreparable injury or any substantial detriment to service will not result, and whenever public convenience and necessity requires, permit the use by any other utility of its poles or other equipment. This statute confers the power exercised by the commission in the provision of the order here considered. No compensation is provided for, but as recited in the opinion of the commission if the parties do not agree upon compensation for the use the commission will fix it. The plaintiff also contends that such a provision cannot be inserted in the order designating the property acquired and fixing the compensation. But sec. 197.05 (2), Stats., confers on the commission power not only to fix the compensation to be awarded, but all other terms and conditions of purchase which it shall ascertain to be reasonable. We consider this sufficient warrant for the provision.

The plaintiff objects to a provision of the order that "the village of Brooklyn may . . . pay to the person or persons lawfully entitled thereto, or in lieu thereof may pay into a proper court for the use and benefit of such persons the sum of $10,000," etc. This is a proper provision. It secures to the bondholders having a first lien on the property of the power company the application of the fund paid to reduction of the mortgage debt, and makes impossible such misapplication of the fund and defrauding of the bondholders as occurred in the *Kaukauna Case, supra.* The commission might properly make this provision pursuant to its power under the statute to fix the terms and conditions of purchase. The

commission is not a court, and is without jurisdiction to determine the legal propositions involved in directing payment to the persons entitled to the fund.

We believe this sufficiently covers the issues raised on the appeal, although it does not specifically mention all matters discussed in the briefs.

*By the Court.*—The judgment of the circuit court is affirmed.

The following memorandum was filed September 9, 1935:

PER CURIAM (*on motion for rehearing*). Attention is called in the brief in support of the motion for rehearing to a misstatement in the statement of facts preceding the opinion of the court to the effect that upon its purchase from the original local utility of its franchise and property the plaintiff discarded a generating plant included in the purchase. The original utility had no generating plant, but purchased its current from another utility supplying current wholesale. Correction is hereby made of the statement of facts in that regard.

A motion for a rehearing was denied, with $25 costs, on September 10, 1935.