PARDEEVILLE ELECTRIC LIGHT COMPANY and another, Appellants, vs. PUBLIC SERVICE COMMISSION and another, Respondents.

*October 11—November 5, 1935.*

For the appellants there was a brief by *Schubring, Ryan & Petersen* of Madison and *Bogue & Sanderson* of Portage, and oral argument by *William Ryan.*

For the respondents there was a brief by the *Attorney General, H. T. Ferguson,* special assistant attorney general, and *Alvin C. Reis,* chief counsel, attorneys for the Public Service Commission, and *Loomis & Roswell* of Mauston, attorneys for the village of Pardeeville, and oral argument by *Mr. Ferguson, Mr. Reis,* and *Mr. Orland S. Loomis.*

WICKHEM, J. Plaintiff company is a corporation engaged in the business of furnishing electrical public utility service in the village of Pardeeville. The plaintiff Chandler is secretary and treasurer of the company, and owns all but five shares of the stock. Since the rights of the plaintiff company are determinative on this appeal, and those of Chandler derived therefrom, the word "plaintiff" will be hereafter used to designate the company, and there will be no occasion for separately referring to Chandler.

The electors of the village voted to acquire the plant and equipment of plaintiff, and the result of the election was duly certified to the Public Service Commission, which set a date for the hearing upon the matter of determining just compensation to be paid by the village for the taking of the property. Some testimony was taken, and a further hearing was set by the Public Service Commission to be held on September 20, 1934. Plaintiffs thereupon instituted this action to restrain further proceedings upon the ground that no verdict of a jury had been obtained upon the question of necessity for the taking.

It is admitted by the answer that the village of Pardeeville granted a franchise to L. H. Rock in 1896, for the furnish-

ing of light and power by means of electrical energy, and that the rights and privileges of Rock were thereafter conveyed through various parties to Fox River Milling & Power Company. On March 2, 1909, the village council passed an ordinance which granted an indeterminate permit to the Fox River Milling & Power Company, plaintiff's predecessor in interest, to maintain and operate the electric plant and system in the village.

Plaintiff contends that it is operating under an indeterminate permit arising from the franchise of 1896, while defendant contends that plaintiff is operating under an indeterminate permit granted in 1909. If plaintiff's contention is sound, the franchise of 1896 became an indeterminate permit by the provisions of ch. 596, Laws of 1911 (now sec. 196.55, Stats.), by the terms of which the verdict of a jury is required to determine the necessity for taking. If defendants' position is correct, sec. 196.57, Stats., is applicable. This section, originally enacted by ch. 499, Laws of 1907, now reads as follows:

"Any public utility accepting or operating under any license, permit or franchise granted after July 11, 1907, shall by acceptance of such indeterminate permit be deemed to have consented to a future purchase of its property actually used and useful for the convenience of the public . . . and shall thereby be deemed to have waived the right of requiring the necessity of such taking to be established by the verdict of a jury, . . . ."

The trial court found as a fact, and as an additional and separate ground for his determination, that plaintiff's predecessor in title applied for, accepted, and operated under the permit of 1909, and that plaintiff has so operated since its purchase of the property. A careful examination of the testimony offered satisfies us that this finding is not against the great weight or clear preponderance of the evidence, and that it must be accepted as a verity here. A detailed analysis

of the evidence would unduly extend this opinion, without performing a corresponding service.

It is plaintiff's further contention: (1) That the indeterminate permit granted in 1909 was not in response to an application filed and published, as required by sec. 940*b*, Stats. 1911; (2) that there was no satisfaction of the requirements of sec. 940*e*, Stats. 1911, that the village advertise for bids for such franchise for at least three weeks, and ultimately accepted only the highest bid. It is not contended by defendants that there is any evidence showing compliance with these sections. It is contended, however, that the matter is covered by sec. 196.56, Stats., which provides as follows:

"196.56 No franchise affected by sec. 196.55 and no indeterminate permit shall be declared invalid if such franchise or permit shall not have been obtained by fraud, bribery or corrupt practices; and, when the same was granted, no officer of the municipality granting the same was directly or indirectly interested in such franchise or permit or in the corporation obtaining same; and the corporation having the same shall have prior to the surrendering of said franchise or the beginning of its public service under said permit, in good faith purchased or constructed any public utility, or any part thereof by such franchise authorized; and said corporation in obtaining such franchise or permit shall have made substantial compliance with the requirements provided by law for the obtaining of said franchise or permit. Subject to the foregoing exceptions, every such franchise and permit is hereby legalized and confirmed."

This section, however, appears plainly to relate only to franchises granted prior to July 11, 1907, and to which the provisions of sec. 196.55 are applicable. As originally passed, the validating clause (ch. 217, Laws 1911), provided:

"No franchise heretofore surrendered by any corporation of this state in the manner and within the time provided by section 1797*m*—77 [now sec. 196.55], and no indeterminate permit based thereon, shall be declared invalid," etc.

Thus, this section was originally designed to invalidate only franchises granted prior to July 11, 1907. While there have been a few slight verbal changes in the opening sentence of this section, there is nothing upon which to base a conclusion that its scope has been broadened. The revisor's note, 1929, referring to provisions then made or proposed, states: "The law is not changed. The reference to 196.55 means a franchise which by operation of law became an indeterminate permit."

However, it is the conclusion of the court that since plaintiff's predecessor in title informally applied for the franchise, accepted it, and operated under it from 1909 up to the time of sale to plaintiff, it would be estopped to deny that it was exercising the privileges granted by the 1909 permit, or to raise questions of invalidity based upon the irregularity of the procedure by which the permit was granted. *State ex rel. Smythe v. Milwaukee Ind. Tel. Co.* 133 Wis. 588, 114 N. W. 108, 315. Plaintiff, which has operated under the 1909 permit since the sale of the property to it, occupies the same position and is subject to the same estoppel.

For the foregoing reasons, it is concluded that the trial court properly held that plaintiff was operating under an indeterminate permit granted in 1909, and consequently not entitled to a jury trial upon the question of necessity for taking.

*By the Court.*—Judgment affirmed.