WISCONSIN PUBLIC SERVICE CORPORATION, Respondent, vs. PUBLIC SERVICE COMMISSION, Appellant.

*February 9—March 7, 1939.*

For the appellant there was a brief by the *Attorney General,* and *Harold H. Persons* and *H. T. Ferguson,* assistant attorneys general, and oral argument by *Mr. Ferguson* and *Mr. Persons,* and by *Edward J. Hart,* city attorney of Waupaca.

For the respondent there was a brief by *Miller, Mack & Fairchild,* and oral argument by *Bert Vandervelde,* all of Milwaukee.

FAIRCHILD, J. The constitution of this state, sec. 2, art. XI, provides that no municipal corporation shall take private property for public use, against the consent of the owner, without the necessity thereof being first established by the verdict of a jury. In the present case no such verdict was found by a jury before the city of Waupaca commenced proceedings for the acquisition of electric-utility property in that city, and the single issue upon this appeal is whether the utility corporation may be held to have so consented to the taking of its property as to make the jury verdict unnecessary.

When the utility law was first enacted by the legislature of 1907, many utilities were operating under municipal franchises. It was thought that regulation would be more effective if all utilities could be induced to operate under indeterminate permits of the kind created by that law. Uniformity would result and the utilities would benefit because they would be relieved of the necessity of appealing to local boards for

extension of their franchises and for renewals when they expired. Accordingly, ch. 499, Laws of 1907, created sec. 1797*m*—76 of the statutes, which provided that every license, permit, or franchise thereafter granted should have the effect of an indeterminate permit. Because of this provision, every license, permit, or franchise granted after the law of 1907 went into effect is to be regarded as an indeterminate permit, granted upon the condition that the utility consent to permit the municipality to acquire its property at a price to be fixed by the commission.

The legislature evidently expected that existing utilities would exchange their franchises for indeterminate permits, because in secs. 1797*m*—77 and 1797*m*—78, created by the act of 1907, the legislature provided a procedure for the making of such exchanges and limited the time within which they could be made to July 1, 1908. By ch. 180, Laws of 1909, the time for obtaining indeterminate permits by exchange was extended to January 1, 1911. But a condition of the surrender and exchange was consent to acquisition, and some of the utilities did not respond to the legislative invitation.

In July, 1911, the legislature enacted ch. 596, Laws of 1911, with the evident purpose of completing the standardization of utility permits. *La Crosse v. La Crosse Gas & Electric Co.* (1911) 145 Wis. 408, 421, 130 N. W. 530; *South Shore Utility Co. v. Railroad Comm.* (1932) 207 Wis. 95, 103, 240 N. W. 784. As noted above, sec. 1797*m*—77, created by the act of 1907, provided for the voluntary surrender of franchises. Ch. 596, Laws of 1911, amended that section. As amended, it constitutes sec. 196.55 of the present statutes. Sec. 196.55 provides that every license, permit, or franchise granted prior to July 11, 1907, by the state or by a municipality, is so altered and amended as to constitute and be an indeterminate permit as defined in other sections of

the law, except as provided by sec. 197.02, Stats. Sec. 197.02 provides that if a municipality shall determine to acquire a plant operated under an indeterminate permit as provided in sec. 196.55, such municipality shall bring an action in the circuit court against the utility for an adjudication as to the necessity of such taking by the municipality, and that unless the parties waive a jury, the question of necessity shall be submitted to a jury. It is evident that the legislature had in mind the requirement of sec. 2, art. XI, of the constitution when it made this provision for jury trial.

After enactment of ch. 596, Laws of 1911, there were two kinds of indeterminate permits, and three ways in which a permit might have been obtained by a utility. The two kinds of indeterminate permits were, (1) permits with waiver, or indeterminate permits without the right to demand a jury verdict, and (2) permits without waiver, or indeterminate permits conferred by ch. 596 and carrying the right to demand a jury verdict. Permits without the right to demand a jury verdict were obtained either, (1) by consenting to acquisition when applying for a new permit or franchise after the law of 1907 was enacted, or (2) by surrendering an existing franchise in accordance with ch. 499, Laws of 1907, and ch. 180, Laws of 1909. After January 1, 1911, the second way of obtaining an indeterminate permit with waiver no longer existed, but as we have seen, ch. 596, Laws of 1911, created a third way of obtaining a permit, namely, (3) by operation of law, existing utility franchises being converted into indeterminate permits with the right of jury trial on the issue of necessity. *Wisconsin P. & L. Co. v. Public Service Comm.* (1935) 219 Wis. 104, 112, 261 N. W. 711, 262 N. W. 257; *Pardeeville E. L. Co. v. Public Service Comm.* (1935) 219 Wis. 482, 263 N. W. 366.

It is contended by the commission that when the city of Waupaca began proceedings to acquire the utility in 1934, it

was operating under an indeterminate permit which it had obtained by method (1) or (2), and was therefore not entitled to demand a jury verdict. The utility contends that it was operating under a permit conferred as in (3).

The argument of the commission is that the Waupaca utility gave expression to its consent to municipal acquisition by the surrender of December 28, 1910, together with the amendment of January 9, 1911. It is argued that since the intention to surrender was clearly manifested, that intention must govern. But it seems plain that nothing the officials of the utility could do after January 1, 1911, could place them in the position of having accepted advantages which the legislature had said were to be accepted, if at all, on or before January 1, 1911. Neither the city nor the utility could extend the time, and the consent expressed by the utility on January 9, 1911, since it did not obtain the advantages contemplated, cannot be held to be a continuing consent. This is particularly evident in view of the fact that ch. 596, Laws of 1911, purported to confer upon the utility the very advantages it had hoped to secure by its attempted surrender, and to confer those advantages without requiring the utility to consent to acquisition without the taking of a jury verdict as to the necessity for the acquisition.

It is also contended on behalf of the commission that by continuing to operate after the expiration date of its franchise, October 2, 1914, the utility voluntarily accepted an indeterminate permit without the right of jury verdict. This argument bears little weight in view of the fact that the legislature, by ch. 596, had conferred upon the utility an indeterminate permit whose validity the utility had no reason to question. It had the right to assume that the effect of ch. 596 was to authorize it to continue to operate for an indefinite period.

Ch. 596, Laws of 1911, was an attempt to accomplish two distinct things. It was an attempt to nullify and destroy the

special charters or franchises under which the older utilities were then operating. It was also an attempt to confer upon those utilities the advantages of indeterminate permits, thus relieving them of the necessity of applying for new permits when their charters expired. In *Superior Water, L. & P. Co. v. Superior* (1923), 263 U. S. 125, 44 Sup. Ct. 82, 68 L. Ed. 204, the supreme court of the United States held that ch. 596 could not deprive a utility of contract or property rights. But that court did not say that ch. 596 was wholly void, or that it was not effective so far as it purported to grant indeterminate permits to utilities then operating under franchises granted prior to 1907.

As counsel for the appellant concedes, the impression has long prevailed that ch. 596, Laws of 1911, was effective in conferring indeterminate permits. In *Wisconsin P. & L. Co. v. Public Service Comm.* (1935) 219 Wis. 104, 111, 261 N. W. 711, 262 N. W. 257, the court said that by virtue of ch. 596, Laws of 1911, the franchise there in question became an indeterminate permit. In *Pardeeville E. L. Co. v. Public Service Comm.* (1935) 219 Wis. 482, 484, 263 N. W. 366, it was said that if the plaintiff utility was correct in its position that it had continued until 1911 to operate under a franchise granted in 1896, then that franchise became an indeterminate permit by the provisions of ch. 596, Laws of 1911. We see no occasion for holding that ch. 596, in so far as it conferred indeterminate permits, was void, as the appellant contends, and we feel constrained to hold that by virtue of that chapter the Waupaca utility was granted an indeterminate permit with the right to demand a jury verdict in case the municipality should determine to acquire its property.

By continued operation after expiration of the electric-utility franchise in 1914, the utility expressed its willingness to come within the provisions of the utility on the favorable terms offered in ch. 596, Laws of 1911. There can be no

question as to the right of the legislature to confer indeterminate permits upon such terms and conditions as it would. Having conferred upon the Waupaca utility an indeterminate permit with the right to demand a jury verdict, the state and municipality are bound by the terms of that permit once it has been accepted and acted upon as in the present case. Constitutional guarantees, both state and federal, protected the utility against an invasion of its property and contract rights, and if such an invasion was intended by the legislature when it enacted ch. 596, to that extent the chapter was invalid. But nothing in either constitution prevented the utility from voluntarily accepting the offer of the legislature as it appeared on the statute books when the electric-utility franchise expired.

The circuit court correctly concluded that acquisition proceedings could not be commenced without obtaining a jury verdict establishing the necessity for the taking.

*By the Court.*—Judgment affirmed.