Stolze and wife, Appellants, vs. Milwaukee & Lake Winnebago Railroad Company and others, imp., Respondents.

*January 9—January 28, 1902.*

*Railroads: Eminent domain: Condemnation proceedings: Award of commissioners: Deposit with clerk: Diversion by depositor or its creditors: Statutes: Practice: Satisfaction of judgment: When title to condemned property vests: Constitutional law: Just compensation, when includes taxable costs and disbursements: Insufficient deposit: Injunction: Pleading: Interest.*

1. Money deposited with the clerk of the circuit court under secs. 1850, 1851, Stats. 1898, to cover an award of commissioners in condemnation proceedings, cannot be diverted from the purpose thereof by the depositor or its creditors. It must remain subject to the order of him for whom it was deposited until he may choose to claim it in the manner prescribed by such sections.

2. The way money must be paid or tendered in condemnation proceedings, to satisfy the obligation of the party seeking to ob-

Stolze v. M. & L. W. R. Co. 113 Wis. 44.

tain property by right of eminent domain, is governed by stat-
ute, not by common-law rules.

3. The final award in condemnation proceedings having been made
by a judgment on appeal from the award of commissioners, the
formal extinguishment of such judgment is not a condition
precedent to the acquirement of the rights sought to be ob-
tained. The payment, in the manner indicated by statute, of
money sufficient to satisfy the constitutional guaranty of a just
compensation to the landowner for his property, taken or dam-
aged, is all that is necessary.

4. By payment, in the manner indicated in the statute, of the sum
of money required to compensate a landowner for his prop-
erty, taken or damaged by the right of eminent domain, a judg-
ment finally determining the amount of such compensation is
thereby paid, and satisfaction thereof becomes a matter which
may be accomplished in any manner provided by law for ob-
taining satisfaction of record of a paid judgment.

5. The sum of money to cover an award in condemnation proceed-
ings, or a receipt showing payment thereof to the party en-
titled thereto, must be deposited in the office of the clerk of the
circuit court where the report of the commissioners was filed
and recorded, and the facts in that regard be noted by such
clerk at the foot of such record, to fully vest the title to the
right sought to be acquired in the party seeking to obtain the
same, regardless of whether the award as finally made is in
the form of a judgment rendered in another county to which
the condemnation proceedings were removed for trial on appeal
from the first award.

6. Since private property cannot be taken by the right of eminent
domain without just compensation therefor being first ascer-
tained and paid to the owner or deposited in court for his use,
the statutes designed to accomplish such ascertainment and
payment must be construed so as to fully satisfy the constitu-
tional guaranty in that regard or be held void.

7. A just compensation for property taken by the right of eminent
domain, within the meaning of the constitution, includes such
reasonable costs and disbursements as are taxable in favor of
a prevailing party in similar proceedings incurred by the prop-
erty owner in securing both the ascertainment and payment of
such compensation.

8. Costs incurred by a property owner in fruitless endeavors to
collect his award in condemnation proceedings, which are ordi-
narily taxable in favor of a judgment creditor under similar
circumstances, must be paid to him as part of the compensa-
tion for his property taken or damaged.

9. If a party, seeking to acquire property by the right of eminent domain, deposits money covering the award of the commissioners pursuant to sec. 1850, Stats. 1898, but neglects to pay or deposit, in the manner required by the statute, the additional sum of money awarded to the landowner by the judgment on appeal, or to pay the reasonable costs incurred in fruitless endeavors to collect such judgment, and such costs incurred, if any, in an equity action to restrain the use of the property involved until after just compensation is paid, and while such equity action is pending he pays into court where the report of the commissioners was recorded, money, sufficient with the first deposit to cover the face of the judgment and interest thereon up to the time of such payment, such payment alone will not satisfy the right of the owner of the property to à just compensation therefor.

10. If the facts as to payment as aforesaid be pleaded in the equity action by supplemental answer as a defense and be established, even if the amount paid were all the landowner was entitled to receive, that would not show extinguishment of the cause of action from the beginning, the plaintiff not having accepted the money or done anything indicating assent to the payment into court as a settlement of his suit. In such circumstances the rule has not been applied that a cause of action which has been extinguished during the pendency of a suit to enforce it cannot be the basis of a judgment for costs.

11. In the situation indicated in No. 9, if the party seeking to acquire property desires to submit to and satisfy the condition precedent thereto and stop the litigation, it should pay, in the proper way, sufficient money to cover the face of the judgment and interest, the costs ordinarily recoverable in proceedings to enforce payment of a judgment, and the costs of the equity action up to the time of such payment; and for the purpose of determining the amount required therefor the costs should be ascertained by proper proceedings in the equity action.

12. Where the right is sought, by sovereign authority, to take or damage private property, the owner thereof may refuse to accept money deposited to satisfy his award in condemnation proceedings till the whole amount to which he is entitled shall have been so deposited, and claim interest on the award as first made from the date thereof to such time.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Manitowoc county: MICHAEL KIRWAN, Circuit Judge. *Reversed.*

Action to restrain a railway company from appropriating
the plaintiff's lands, by right of eminent domain, till com-
pensation therefor should be paid as required by law.    The
facts are as follows:    The Manitowoc Terminal Company
duly instituted proceedings to acquire, for railway purposes,
certain lands owned by plaintiffs, in which such action was
duly taken that April 3, 1895, an award was made to plaint-
iffs of $1,766 as a just compensation for their property, the
award being duly filed on said day.    On the same day the
amount of the award was duly deposited by the railway cor-
poration in the office of the clerk of the circuit court for
Manitowoc county, where the report of the commissioners
was filed, and thereupon the property involved was appropri-
ated by the railway company by the construction of its rail-
way track thereon.    Both parties to the proceedings season-
ably appealed from the award, the appeal of the plaintiffs
being taken April 3, 1895.    The appeals were consolidated
and in due form of law removed to the circuit court for Brown
county for determination, where the trial was had, the result
being that plaintiffs were awarded $9,000.    Judgment was
entered accordingly for $9,336.29 damages and costs, from
which an appeal was taken to this court, resulting in an af-
firmance June 23, 1898.    *Stolze v. Manitowoc T. Co.* 100
Wis. 208.    A transcript of the judgment rendered in the trial
court was filed in the office of the clerk of the circuit court
for Manitowoc county July 1, 1897, and an execution was
issued from the circuit court for Brown county for the collec-
tion thereof, which execution was returned unsatisfied.    Sub-
sequently a special proceeding was instituted by plaintiffs to
sequestrate the assets of the corporation under sec. 3216,
Stats. 1898, in which a receiver of the terminal company was
appointed.    Plaintiffs were unable, by means of such pro-
ceeding, to obtain satisfaction of their judgment or any part
thereof.    October 23, 1899, upon due notice to the parties

interested, the costs in such special proceedings were duly
taxed by the court at $810.36, the expenses of the receiver
being included therein.   The notice of the taxation of costs
was in form for a taxation of the costs, fees and disburse-
ments of the receiver.   In the taxation proceeding, upon
proofs made to the court, costs were taxed, including all the
expenses incurred subsequent to the judgment in endeavoring
to enforce the same, the total amount being $810.36.   After
the decision reported in 100 Wis. 208, and the filing of the
*remittitur* in the trial court, this action was commenced in
the circuit court for Manitowoc county to restrain the use of
the land in question for railway purposes until the judgment
in the condemnation action, and the subsequent costs, were
paid, in which the *Milwaukee & Lake Winnebago Railway
Company,* and the receivers of the *Wisconsin Central Railway
Company,* were joined as defendants with the terminal com-
pany.   The right of the plaintiffs to the relief claimed was
challenged by a demurrer to the complaint.   The demurrer
was overruled, and on appeal to this court the decision was
affirmed September 26, 1899.   The case is reported in 104
Wis. 47.   September 30, 1899, there was deposited in the
office of the clerk of the circuit court for Manitowoc county,
for plaintiffs, $8,955.17, as and for the balance necessary,
with the $1,766 theretofore deposited as aforesaid, to satisfy
the judgment in the condemnation action.   February 8, 1900,
the record in this case having been in the meantime filed in
the office of the clerk of the circuit court for Manitowoc
county, supplemental answers were served, calling attention
to the deposit of September 30th, and pleading the same, and
the deposit theretofore made, as a defense to the suit.   The
court, at the end of the trial, allowed such answers to be filed,
awarding plaintiffs, as terms thereof, their taxable costs up
to the time of such allowance.   The issues raised by the plead-
ings were tried, and November 12, 1900, the court filed find-

ings of fact, giving the history of the litigation as heretofore stated, and deciding in addition thereto, among other things not necessary to mention, in substance as follows: The receiver appointed in the sequestration proceedings claimed that he was entitled to take the $1,766 paid to the clerk of the circuit court on the award of the commissioners and administer the same as part of the assets of the Manitowoc Terminal Company. He served on such clerk a notice to that effect. Plaintiffs did not take any part of the money paid into court in the condemnation proceedings, nor did they consent in any way to the use of their land by the railway company. Such money, in the aggregate, covered the entire amount awarded to plaintiffs, including interest on the judgment in the condemnation action, up to the time the deposit was made, September 30, 1899. It did not include any costs incurred in enforcing such judgment, nor any costs in this action. The Manitowoc Terminal Company is insolvent, and all its rights in the right of way in controversy were, before the commencement of this action, transferred to the defendant *Milwaukee & Lake Winnebago Railway Company*. The proceedings on the part of the terminal company, to acquire such right of way, and all its acts in that regard, were instigated by the *Milwaukee & Lake Winnebago Railway Company*. The latter railway company knew that the terminal company was insolvent. All the facts stated were fully known to the *Milwaukee & Lake Winnebago Railway Company* as they occurred, and it was in fact a party thereto. It now claims the right to maintain and operate the railway constructed by the terminal company across the lands claimed by plaintiffs, wholly upon the ground that the right to do so was acquired in the condemnation proceedings and the occurrences that have been mentioned. At the time of the commencement of this action the receivers of the *Wisconsin Central Railway Company* were in possession of the property in dispute under

a lease from the *Milwaukee & Lake Winnebago Company*. There were further findings as to the right of plaintiffs to a farm crossing of a kind specified and at a place designated in the findings.

On the findings detailed and referred to the court decided that the title to the right of way in controversy vested in the successor of the terminal company upon the deposit being made September 30, 1899, and that the effect thereof was to defeat this action from the beginning so far as it was based on any claim of title to the right of way by plaintiffs; that under the circumstances they were entitled to recover costs taxed in this action only as terms of allowing the supplemental answers; that such costs were no legitimate part of the judgment to be rendered against the defendants or either of them; that plaintiffs were entitled to the judgment requiring successor of the terminal company to construct and maintain for them a farm crossing as indicated in the findings, but were not entitled to any other relief by the final decree; that they were entitled to withdraw from the possession of the clerk of the circuit court the money placed there for them as aforesaid.

Thereafter the costs were taxed by the clerk, and subsequently, on a review thereof by the court, it was finally decided plaintiffs should be allowed $233.01 as terms of filing the supplemental answers. It was claimed on behalf of plaintiffs that they were entitled to full costs in this case, including the $810.36 taxed in the special proceedings, and to a judgment therefor in due form. Judgment was entered according to the decision of the court as aforesaid, no mention being made therein of costs to either party.

For the appellants there was a brief signed, *Timlin, Glicksman & Conway,* and *G. G. Sedgwick,* and oral argument by *E. A. Conway.*

For the respondents there was a brief by *Thos. H. Gill,* and oral argument by *C. M. Morris.*

MARSHALL, J.   This appeal turns, in the main, on the effect of the two deposits of money for the benefit of appellants in the office of the clerk of the circuit court where the report of the commissioners in the condemnation proceeding was recorded.   It is conceded that the two deposits, when made, were sufficient to satisfy plaintiffs' legal and equitable rights as they stood on the day the last deposit was made, September 30, 1899, except as to costs incurred in the enforcement of the judgment in the condemnation action and in this action, if the first deposit was then available to them.   Counsel for appellants say it was not so available, because the receiver in the sequestration proceeding was entitled to take that fund and administer it as part of the assets of the Manitowoc Terminal Company.   That contention is based on the theory that, notwithstanding the money was specially deposited for the benefit of plaintiffs, it still remained the property of the depositor.   The statute under which the deposit was made does not seem to contemplate that, after such an act and the corporation takes possession of the property sought to be acquired and appropriates the same to its use, it has any control over the fund.   Sec. 1850, Stats. 1898, provides:

"At any time after the making of such award the railroad corporation may pay to the owners of the lands so taken or to the clerk of said court for the use of such owners the amounts awarded by the commissioners, and thereupon may enter upon, take and use the land for the purposes for which it was condemned, and may move said court or judge, upon twenty-four hours' notice, that a writ of assistance may be issued to put such corporation into possession of the same; and said court or judge shall, upon the corporation giving security in such additional amount as the court or judge shall require to pay any judgment that shall be recovered against it on appeal, award such writ.   If such corporation be in possession or be put in possession of such land pending an appeal the owners or parties entitled thereto shall be entitled to receive the money paid into court on account of the award appealed from, without prejudice to the appeal taken."

It will be observed that, by the very terms of the statute, money deposited pursuant thereto is under the absolute control of the landowner. True, there is a further provision in the statute, following that we have quoted, to the effect that if the corporation seeking to acquire the land appeals from the award of the commissioners, the landowner cannot withdraw the money paid into court by such corporation without giving a bond to protect it from loss in case of a final reduction of the award. But that does not change the situation. There is nothing in that to indicate that the corporation, after depositing the money and taking possession of and appropriating the land, can reclaim the fund or divert it in any way, especially while it insists upon its right to the land and continues in the enjoyment thereof.

We are not unmindful of the fact that in *Neilson v. C. & N. W. R. Co.* 91 Wis. 557, it was held that the landowner who appeals from an award made in condemnation proceedings and does not in the meantime take the money deposited for him, and succeeds in increasing such award, is entitled to interest on the whole amount finally awarded to him from the date of the first award. That was based upon the right of the landowner to refuse to part with his property or take any compensation therefor till that full and just compensation secured to him by the constitution shall be provided. It does not militate against the plain meaning of the statute that money, when once deposited in court for the landowner, in the circumstances under discussion, is at his disposal for the purpose of the deposit at any time he may see fit to claim it, and without any prejudice to his right, in due form of law, to pursue the appropriator of his property to obtain further compensation. While the landowner is not bound to withdraw the money, it is obviously placed beyond the control of the corporation. That is the plain meaning of the statute. It follows that the full amount of the first deposit made for appellants must be counted in determining whether the full

amount to which they were entitled was at their disposal September 30, 1899.

Appellants' counsel further contend that the circumstances of the deposit do not satisfy common-law rules as regards tender of payment, to extinguish a cause of action or satisfy a judgment. It is a sufficient answer to that to say that the manner in which tender of payment is required to be made to a landowner, in proceedings to deprive him of his property by the power of eminent domain, is regulated by statute, and, so far as it is reasonably calculated to secure to such landowner the just compensation which the constitution guarantees him, it is exclusive.

It is suggested that, as this action was founded on the judgment rendered and recorded in the circuit court for Brown county, it is not affected by a payment to the clerk of the circuit court for Manitowoc county. True, but payment as made, even if it be held to have been sufficient to cover the judgment and subsequent costs necessary to its extinguishment, and the satisfaction of all claims of appellants requisite to divest them of their property, did not *ipso facto* discharge the judgment. But that does not affect this case. If the statute authorized the payment to the clerk of the circuit court where the condemnation proceedings were commenced and the report of the commissioners was filed, and required payment to be so paid as a condition precedent to the acquirement of the property by the railway company, except in case of consent of the owners to receive the money and execute a receipt in the form prescribed by the statute to be deposited in lieu of the money, then there was no other course to pursue than the one adopted. By reference to those parts of secs. 1850 and 1851 covering the subject, it will be seen that the first section provides that the report of the commissioners shall be filed in the office of the clerk of the court where the proceedings were commenced, and that it shall be recorded in the judgment book of said court. The next section provides

that, when payment of the award shall be made into said
court, or a receipt shall be filed showing payment to the person
entitled to the money, the clerk of said court shall minute the
fact at the foot of the report of the commissioners in the judg-
ment book of said court, and that such latter circumstance shall
be the final act necessary to devest the landowner of his prop-
erty and appropriate it to public use. Obviously, there is but
one place in which the corporation can in such circumstances
deposit the compensation required to be given to the owner of
the property sought to be acquired, and that is in the office
of the clerk of the circuit court where the award of the com-
missioners is recorded, regardless of where the action on ap-
peal from the decision of the commissioners may be tried, and
the judgment embodied in the final result be recorded. If
the report of the commissioners is recorded in one county,
and the final award is made by judgment rendered on appeal
in another county, as in this case, the deposit of the full
amount to which the landowner is entitled in the former
county will not of itself discharge such judgment of record;
but it will operate as full payment thereof, and proof of the
deposit may doubtless be made before the court in the latter
county and an order be obtained discharging the judgment.
The formal discharge of the judgment in such a case is not
a condition precedent to the acquirement of the property
sought by the corporation. Payment to the landowner, and
the filing of his receipt showing such fact in the office of the
clerk of the circuit court where the report of the commission-
ers shall have been recorded, or the deposit of money in that
place, sufficient to cover the award, and the notation required
at the foot of such record, complete the forms of law neces-
sary to convert the private property involved into public
property.

It must be conceded that if, as a condition of the right to
take appellants' property, they were entitled to reimburse-
ment for their necessary expenditures in their efforts to real-

ize upon their judgment in the condemnation action, the
money deposited in court did not extinguish the cause of ac-
tion in this suit, and the judgment rendered on a contrary
theory is erroneous.    The learned trial court held that pay-
ment into court of the face of such judgment, and interest
up to the date of payment, and a proper notation thereof on
the record of the report of the commissioners as provided in
sec. 1851, Stats. 1898, divested appellants of all interest, in
the real estate sought to be acquired, adverse to the railway
company, and that, upon the defense of such payment being
permitted in this suit by the supplemental answers, appellants
were deprived of their cause of action as from the beginning,
so that the suit could not thereafter proceed to judgment in
their favor even for costs up to the time of the bringing in
of the new defense, on the theory that they had any interest
in the land in controversy at the time of the commencement
of this litigation.    That applied the doctrine, that when a
cause of action has been extinguished during the pendency
of an action to enforce it, it cannot further proceed to recover
costs, to different circumstances than it has ordinarily, we
venture to say that it has ever, been applied to in any well-
considered reported case.    But the conclusion we have reached
renders a decision of the question of whether the court rightly
applied it, unnecessary.    It will be found, however, that in
the cases where this and other courts have held that an action
cannot be continued merely for the recovery of costs after the
cause of action sued on has been satisfied, there was a settle-
ment of some kind between the parties after the commence-
ment of the suit, nothing being said about costs, not a mere
tender of satisfaction not including the costs up to the time
of the tender, or a tender not accepted.    *Geiser T. M. Co. v.
Smith,* 36 Wis. 295; *Mason v. Beach,* 55 Wis. 607; *Two
Rivers Mfg. Co. v. Beyer,* 74 Wis. 210; *Collins v. Lowry,* 78
Wis. 329; *Bank of Commerce v. Elliott,* 109 Wis. 648; *Dun-
ton v. Reed,* 17 Me. 178; *Osgood v. Green,* 33 N. H. 318;

*Buell v. Flower,* 39 Conn. 462; *Ayer v. Ashmead,* 31 Conn. 447; *Canfield v. Eleventh Sch. Dist.* 19 Conn. 529; *Torry v. Hadley,* 14 How. Pr. 357.

The trial court gave effect to that part of sec. 1851, Stats. 1898, material to the proposition suggested at the opening of this opinion, according to the letter thereof, holding that costs incurred in endeavoring to collect a judgment rendered in a condemnation proceeding are not a part of the judgment, and that payment of the face of the judgment and interest from its date, in the manner indicated in the section, and a notation thereof as therein indicated, regardless of the property owner's expenditures in fruitless attempts to collect the judgment, operates to take his property against his will and vest it absolutely in the corporation seeking to obtain it for railway purposes. The particular language of the section is as follows:

"When no appeal shall be taken from any award within the time provided by law and the corporation shall have paid the amount thereof into the court or filed a receipt therefor, duly signed by the owner and acknowledged before an officer authorized to take the acknowledgment of deeds, in the office of the clerk of the court, or when, after the determination of such an appeal, the railroad corporation shall have paid into court the amount of the judgment rendered thereon or filed a receipt therefor as aforesaid, the clerk of said court shall make a minute of such payment or of the filing of such receipt at the foot of the record of the report of such commissioners in the judgment book of said court; and thereupon the exclusive use of said premises and every part and parcel thereof shall vest in such corporation, its successors and assigns so long as used for railroad purposes."

What do the words, "paid into court the amount of the judgment rendered thereon," mean? Such meaning must be held to be broad enough to secure to the landowner, under all circumstances, a just compensation for his property before being deprived thereof, or the legislation must be condemned as partly or wholly unconstitutional. The constitution guar-

antees that private property shall not be taken for public use without just compensation being first made therefor. Sec. 13, art. I. If the trial court decided rightly, then the entire compensation awarded to a person by the forms of law in the proceedings to take his property by the right of eminent domain, may be necessarily dissipated by him in fruitless endeavors to collect it, and yet, by the payment into court of the mere face of the award and interest thereon from its date, such property may be appropriated against his will for public purposes, not by an exchange of equivalents, but, in effect, by confiscation. Neither argument' nor the citation of authority, it seems, is needed to demonstrate that a construction of the statute rendering the result indicated possible would call for its judicial condemnation as not satisfying the constitutional guaranty to which we have referred. If we must say the meaning the trial court ascribed to the statute accords with the plain letter thereof, then it follows that the statute is absurdly unreasonable and is unconstitutional, and we must look for some other meaning that will avoid such result and test this appeal thereby. If no such meaning can be discovered, we must determine the rights of the appellants independently of the statute, testing them by the constitutional guaranty.

The subject of whether the necessary costs incurred by a person in efforts to obtain a just compensation for property sought to be taken from him for public purposes by the power of eminent domain, form a part of such compensation and must be paid or tendered before he can be deprived of his property, has received attention in many courts and by eminent text writers. In 2 Lewis, Eminent Domain (2d ed.), § 559, the opinion is expressed and well supported by authority, that any law which casts the burden upon the landowner of paying the costs necessarily incurred by him in having the compensation ascertained, to which he is entitled for property sought to be taken from him by the power

of eminent domain, is unconstitutional.   Since actual pay-
ment of the compensation is as essential under the constitu-
tion as its ascertainment, obviously, expenses necessarily in-
curred in enforcing such payment are as necessary to that full
and just compensation secured to the property owner by the
constitution as are costs incurred in having the amount of the
compensation ascertained.   In *San Francisco v. Collins*, 98
Cal. 259, it was held that the authority of the courts to allow
or withhold costs as a part of the compensation to be awarded
to a landowner, as a condition of his being deprived of his
property by the power of eminent domain, must be tested by
the constitutional guaranty that no such deprivation shall
occur except upon condition that just compensation be made
to the owner for the property taken; and that the amount of
the damages to which the property owner is entitled cannot
rightly be diminished by expenses incurred in obtaining the
same so that he will not in the end receive that full com-
pensation for his property which the appropriator thereof
in justice ought to pay.   In *Epling v. Dickson*, 170 Ill. 329,
where the same subject was considered, this language was
used:   "Where private property is taken or damaged for
public use, just compensation cannot be made to the property
owner if he is compelled to proceed in the courts for his just
rights at his own costs."   In *Dolores No. 2 L. & C. Co. v.
Hartman*, 17 Colo. 138, it was held that the costs necessarily
incurred by a person in enforcing his constitutional right
to a just compensation for property sought to be taken from
him by the right of eminent domain, are a part of the just
compensation for such property, to which he is entitled under
the constitutional guaranty in that regard.   It was sug-
gested that any other rule would result in a possible taking
of property without rendering the owner thereof any com-
pensation whatever, because of his being compelled to ex-
pend an equivalent of the amount finally awarded to him in
trying to obtain it.

Stolze v. M. & L. W. R. Co. 113 Wis. 44.

The cases cited voice the true spirit of the constitutional guaranty. It cannot have been the purpose of the framers of the constitution that a person compelled to surrender his property for public uses shall have any less as compensation therefor than a full equivalent, measured by all reasonable rules. That must include all necessary expenses incurred by him in the enforcement of his rights, which are taxable according to law. He must have in the end a full, just compensation for his property. It must not be diminished by any costs reasonably incurred in condemnation proceedings, or in collecting the award, which are ordinarily taxable by the rules of law in favor of the prevailing party in an action or proceeding to make his judicial remedy effective. That is the true constitutional measure of his rights. If it cannot be found expressed within the scope of sec. 1851, Stats. 1898, then we have before us another instance evidencing the vast importance of constitutional limitations for the protection of personal and property rights. We shall not spend time to demonstrate that rules for judicial construction will enable us to so bend the words of sec. 1851, "paid into court the amount of the judgment," out of their ordinary meaning as to include all costs allowed by law, necessarily incurring in the enforcement of the judgment. Suffice it to say that they must be so bent to satisfy the demands of the constitution.

It follows that the just compensation which appellants were entitled to receive as a condition of their property being appropriated for railway purposes September 30, 1899, in addition to the amount then and previously deposited for their benefit in the office of the clerk of the circuit court for Manitowoc county, was the costs incurred by them in the special proceeding to enforce the judgment rendered in the condemnation action, and such costs as were properly taxable in their favor in this action up to that time. If the respondents desired to then stop the litigation, they should have applied to the court in this cause for an adjustment of such costs, to the

end that they might pay them, and then paid them to appellants or deposited the same in court for their use together with the deposit that was made.

Since the full amount which appellants were entitled to receive was not paid to them or into court for their benefit, under the rules laid down in *Neilson v. C. & N. W. R. Co.* 91 Wis. 557, they were justified in not taking the money which was deposited and in standing upon their legal rights and demanding interest on the judgment in the condemnation action till tender of the full amount to which they were entitled or payment thereof into court.

A point is made in the brief of counsel for respondents that the $810.36, taxed as costs in the sequestration proceeding instituted by appellants in the condemnation proceeding, included the costs and expenses of the receiver and were taxed at his instance. That accords with the findings filed in this action; but the court found that the $810.36 was allowed as and for the costs and expenses incurred by appellants in the condemnation action subsequent to judgment. All such costs and expenses were incurred at the instance of appellants and primarily for their benefit; they were the losers thereof unless collected of the adverse party. They are just as legitimately entitled to be reimbursed for them as for any others incurred in securing compensation for their property. They were not taxable as costs in this case, as contended for by appellants' counsel, for they were not costs incurred in this case. But payment thereof should have been enforced by the court as part of appellants' compensation for their property; or, to put it more accurately, to the end that the compensation awarded to them by the judgment in the condemnation proceedings should not be diminished by the necessary expenses incurred in collecting it.

The result of the foregoing is that the judgment must be reversed and the cause remanded with directions to enter judgment giving the appellants the relief previously adjudged

as regards the farm crossing; also, in form, for a recovery of the costs taxed and allowed to them against respondents in this. action; further, adjudging that appellants are entitled to be paid, as a condition precedent to being deprived of their property, sought to be acquired for railway purposes, in addition to the money heretofore paid into court for them, interest on the judgment rendered in the condemnation action from September 30, 1899, to the date the money deposited in court was withdrawn by them, specifying the amount of such interest down to the date of the corrected judgment; also the $810.36 allowed for costs in the condemnation proceedings subsequent to judgment, and interest thereon from the date of the taxation of such costs, specifying the amount in the aggregate at the time of entering the corrected judgment; and the costs and disbursements of this action as taxed, and such further costs as may be allowed them in the proceedings to perfect the judgment; and that appellants are further entitled to an injunction restraining the use of the land sought to be acquired, as prayed for in the complaint, unless said several sums are paid, and interest thereon from the date of the corrected judgment.

*By the. Court.*—So ordered.