Rocco Salvatare BUDA, Jr., Appellee,

v.

Jack M. FULTON, Commissioner of the Iowa Department of Public Safety, Appellant.

No. 52853.

Supreme Court of Iowa.

March 5, 1968.

Richard C. Turner, Atty. Gen., and Joseph W. Zeller, Asst. Atty. Gen., for appellant.

Gilloon, Klauer, Stapleton & Ernst, Dubuque, for appellee.

RAWLINGS, Justice.

This case comes to us on appeal from judgment of trial court vacating operator's license revocation order issued by State Department of Public Safety.

Understanding the matter presented stands solely in the field of administrative law, under chapter 321B, Code, 1966, we confine ourselves accordingly.

Defendant commissioner caused an order to issue revoking, for 120 days, operator's license held by plaintiff, Rocco Salvatare Buda, Jr.

A post-order requested hearing was held before commissioner's agent with Buda represented by counsel. (Code section 321B.8.) The previously issued order of revocation was sustained. Plaintiff appealed to trial court. (Code section 321B.-9.)

Early morning, March 10, 1967, plaintiff was involved in an automobile accident. He telephoned the police. Officer Schneider soon arrived. Buda was arrested for operating a motor vehicle while intoxicated and taken to the Dubuque Police Station. Within ten minutes after arrival, repeated requests were made that Buda submit to a blood test. He refused.

Plaintiff's petition, on original appeal, alleges generally the defendant, through his agent, erred in sustaining order of revocation, asserting four specific errors. Defendant answered denying all affirmative allegations.

On hearing to trial court, transcript of proceedings before defendant commissioner was first presented in evidence. Subsequently Officer Schneider and plaintiff testified.

In vacating the challenged license revocation order trial court found, inter alia, burden of proof was on defendant commissioner, arresting officer's failure to comply with the law vitiated any subsequent right or authority to impose an administrative sanction, and plaintiff did not under-

stand effect of refusal to provide specimen for chemical analysis.

Under existing circumstances we cannot agree.

I. Referring first to the matter of statutory appeal from commissioner's administrative order to trial court, Code section 321B.9, provides: "If the revocation or denial is sustained the person whose license, permit to drive, or nonresident operating privilege has been revoked or denied, may file a petition within thirty days after the determination by the commissioner of public safety or his authorized agent for a hearing of the matter in the district court in the county wherein the alleged events occurred for which he was arrested or in the county in which the administrative hearing was held. It shall be the duty of the court to set the matter for hearing, and the petitioner shall give twenty days notice thereof to the commissioner. Within fifteen days after receipt of the notice, the commissioner shall file in the office of the clerk of the district court to which the appeal is taken a certified transcript of the testimony and all other proceedings. It shall constitute the record on which the commissioner made his determination. *The court thereafter shall hear the matter de novo and shall affirm or vacate the decision of the commissioner or his authorized agent. The person or the commissioner may appeal to the supreme court in accordance with the Iowa Rules of Civil Procedure."* (Emphasis supplied.)

■ Relatively few jurisdictions hold statutory "hearing de novo", when applied to judicial review of an administrative adjudication, means a limited examination of proceedings by a lower board, commission or officer without leave to introduce additional evidence. See Allen v. Herrera, Tex.Civ.App., 257 S.W.2d 753, 754–755. However, according to the greater weight of apparent authority that term or its equivalent, when so employed, has been given a more realistic liberal interpretation.

In Mason v. World War II Service Compensation Board, 243 Iowa 341, 344, 51 N.W.2d 432, we held a legislative grant of hearing de novo on appeal from official administrative order ordinarily signifies the case is heard anew, afresh, a second time, as in equity; a trial in the commonly accepted sense of that term in a court of general jurisdiction, including the right to produce evidence in the same manner as though the action had originated in the district court.

See also In re Betts' Estate, 2 Ill.App. 2d 453, 119 N.E.2d 801, 805; Louisville & Jefferson County Plan & Zoning Com'n. v. Grady, Ky., 273 S.W.2d 563, 565; Hiner v. Wenger, 197 Va. 869, 91 S.E.2d 637, 639; Foster v. Carson School Dist., 63 Wash.2d 29, 385 P.2d 367, 369; 73 C.J.S. Public Administrative Bodies and Procedure §§ 203–204, pages 552–556; 2 Am.Jur.2d Administrative Law, sections 612–613, pages 452–457, sections 698–701, pages 597–603, sections 747–754, pages 646–655; Annos. 97 A.L.R.2d 1367; and 46 Iowa L.Rev. 862.

■ Upon this basis it appears trial court was correct in holding presentation of evidence by plaintiff, in addition to that disclosed by transcript of proceedings before commissioner, be permitted.

■ II. By the same token our review is de novo. Stated otherwise, as a case is heard in the trial court it is generally so considered on appeal. See Henderson v. Hawkeye-Security Ins. Co., 252 Iowa 97, 100, 106 N.W.2d 86, and State ex rel. McPherson v. Rakey, 236 Iowa 876, 879, 885, 20 N.W.2d 43.

■ III. Though not here of special significance, it is to us evident trial court erred in holding the burden of proof, on appeal by Buda, was upon defendant commissioner.

It was plaintiff's privilege to appeal from commissioner's administrative order. In so doing he necessarily made certain affirmative allegations which, as heretofore disclosed, were denied by defendant.

Rule 344(f) (5), R.C.P., states: "Ordinarily the burden of proof follows the pleading; that is, he who pleads and relies upon the affirmative of an issue must carry the burden of proving it."

As we said in Fortgang Brothers, Inc. v. Cowles, 249 Iowa 73, 76, 85 N.W.2d 916: "It is true generally that the burden of pleading and proving an issue go together. The party who is required to plead an issue has the burden of proving that issue. In re Estate of Ewing, 234 Iowa 950, 955, 14 N.W.2d 633. The true test to determine where is the burden is to consider which party would be entitled to the verdict if no evidence were offered on either side. Veiths v. Hagge, 8 (Clarke) Iowa 163."

Since a licensee's statutory appeal is heard de novo, with right to present evidence as in an ordinary action commenced originally in the district court, we find no legally reasonable basis upon which to hold other than that rule 344(f) (5), quoted supra, applies, even though the appeal be classified as a special proceeding.

In connection with the foregoing see Richard v. Holliday, Iowa, 153 N.W.2d 473, 477; Burkholder v. State Industrial Accident Commission, 242 Or. 276, 409 P.2d 342, 345-346; Dimitroff v. State Industrial Accident Commission, 209 Or. 316, 306 P. 2d 398, 401-402; 31A C.J.S. Evidence §§ 103–104, pages 164–181; 29 Am.Jur.2d, Evidence, sections 127–128, pages 159–162; and McCormick on Evidence, Hornbook Series, section 306, page 635.

IV. Closely related to burden of proof is the matter of quantum of evidence required on the part of an appealing party in order to prevail.

By virtue of the provisions of section 622.56, Code, 1966, official proceedings of the department of public safety are rebuttably presumed to be regular. See State ex rel. Howson v. Consolidated Sch. Dist., 245 Iowa 1244, 1249, 65 N.W.2d 168. With regard to the foregoing see generally 73 C.J.S. Public Administrative Bodies and Procedure § 205, page 556, and 2 Am.Jur.2d, Administrative Law, section 748, page 647.

But where, as in the case now before us, the appeal is heard as an original proceeding, this presumption of regularity does not extend to factual determinations by an officer, board, agency or commission. See United States v. Maxwell, 278 F.2d 206, 209, (8 Cir.), and Hiner v. Wenger, supra, loc. cit., 91 S.E.2d 639. See generally, 2 Am.Jur.2d, Administrative Law, section 753, page 654.

And, since statutory appeal to the trial court is heard as an original proceeding, quantum of proof required as to fact issues is that a licensee establish the allegations of his petition by a preponderance of the evidence. See rule 344(f) (6), R.C.P., and Jones on Evidence, Fourth Ed., section 193, page 368.

V. Trial court's judgment in the matter now before us is based in large part upon the premise plaintiff's constitutional rights were not accorded proper recognition, which in turn served to nullify any right or authority on the part of state department of public safety to revoke the operator's license held by plaintiff.

In arriving at this conclusion trial court explores the field of constitutional law and some relatively recent United States Supreme Court decisions.

Among others, reference is made to Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574, Garrity v. State of New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562, and Rochin v. People of California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183.

Here again we refer to the fact the case at bar is strictly limited to administrative procedures and sanctions, the matter of criminal punishment not being involved.

Neither does this case involve a Code chapter 321 proceeding as in Needles v.

Kelley, Iowa, 156 N.W.2d 276, opinion filed February 6, 1968.

Miranda deals with warnings required on criminal arrest, prior to in-custody-interrogation, and right to counsel. In the instant matter there was no such interrogation. Buda was asked to provide a blood or urine specimen and refused.

Spevack and Garrity, both supra, focus upon the matter of coercive self-incrimination. For reasons disclosed infra that subject is not here involved.

And Rochin, supra, dealt with stomach pumping to induce vomiting in a search for narcotics. As revealed by authorities hereafter cited, neither search and seizure nor unconscionable invasion of the person in the constitutional sense are elements in the case at bar.

We turn now to Schmerber v. State of California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908. That case involved an arrest for driving an automobile while under the influence of intoxicating liquor. During hospitalization of the subject, blood was withdrawn from his body and analysis indicated he was intoxicated.

On trial for crime charged, Schmerber vigorously objected to receipt of test results in evidence, claiming the specimen used was taken despite his counsel-advised refusal to submit. It was contended he had been denied due process of law under Amendment 14, as well as specific guarantees of the Bill of Rights secured against the states by that amendment; his privilege against self-incrimination under Amendment 5; right to counsel under Amendment 6; and right not to be subjected to unreasonable search and seizure in violation of Amendment 4. These claims were rejected and conviction affirmed. See also Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, 1953.

To the extent here material, Breithaupt v. Abram, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448, holds, chemical analysis of blood specimen taken by a physician while the person is unconscious may be introduced in evidence on prosecution for commission of crime. Specifically the court said, loc. cit., 352 U.S. 434, 77 S.Ct. 410: " * * * there is nothing 'brutal' or 'offensive' in the taking of a sample of blood when done, as in this case, under the protective eye of a physician. To be sure, the driver here was unconscious when the blood was taken, but the absence of conscious consent, without more, does not necessarily render the taking a violation of a constitutional right; and certainly the test as administered here would not be considered offensive by even the most delicate. Furthermore, due process is not measured by the yardstick of personal reaction or the sphygmogram of the most sensitive person, but by that whole community sense of 'decency and fairness' that has been woven by common experience into the fabric of acceptable conduct. It is on this bedrock that this Court has established the concept of due process."

We are satisfied recent decisions of this court, dealing with the subject at hand, are in harmony with Schmerber and Breithaupt, both supra. See Severson v. Sueppel, Iowa, 152 N.W.2d 281; State v. Findlay, Iowa, 145 N.W.2d 650, 654; and Gottschalk v. Sueppel, 258 Iowa 1173, 140 N.W.2d 866.

The cases cited by trial court dealing with search and seizure, self-incrimination, custodial preinterrogation warnings, and right to counsel are neither controlling nor persuasive in this administrative matter. In support of that conclusion see Spurbeck v. Statton, 252 Iowa 279, 106 N.W.2d 660; People v. Haeussler, 41 Cal.2d 252, 260 P.2d 8; People v. Bustos, Cal.App., 55 Cal.Rptr. 603; Lee v. State, 187 Kan. 566, 358 P.2d 765; State v. Oleson, 180 Neb. 546, 143 N.W.2d 917; State v. Fields, 74 N.M. 559, 395 P.2d 908; Beare v. Smith, S.D., 140 N.W.2d 603; Hearn v. State, Tex.Cr.App., 411 S.W.2d 543; 52 Iowa L.Rev. 344; and 14 Drake L.Rev. 73.

For reasons hereafter disclosed there is no need to further belabor the matter of constitutional rights.

■ VI. This court has consistently held a constitutional challenge must specify the provisions invoked and state with particularity the details of any claimed transgression. Dickinson v. Porter, 240 Iowa 393, 398, 35 N.W.2d 66, and Fort Dodge, D. M. & So. Ry. v. American Etc. Corp., 256 Iowa 1344, 1351, 131 N.W.2d 515.

■ Generally a court will not inquire into constitutional issues on its own motion. 16 C.J.S. Constitutional Law § 96(a), page 331, and 16 Am.Jur.2d, Constitutional Law, sections 115–116, pages 304–308.

■ Pursuing the matter one more step, an issue should not ordinarily be considered in a noncriminal proceeding unless fairly raised by the pleadings. Henry Walker Park Assn. v. Mathews, 249 Iowa 1246, 1257, 91 N.W.2d 703.

■ Of course, where parties proceed, without objection, to try an issue not so presented it is then usually deemed to be in the case. Morris Plan Leasing Co. v. Bingham Feed and Grain Co., Iowa, 143 N.W.2d 404, 417.

■ But there is no mention in the pleadings of any claimed invasion of Buda's constitutional rights, nor does the record disclose any such issue presented, mentioned or referred to during trial.

His petition on appeal asserts, (1) the arresting officer had no reasonable cause to then believe Buda was intoxicated; (2) arrest was not effected in accord with Code section 321B.3; (3) he did not refuse an intoxication test; and (4) no advice was given that refusal to provide a specimen would result in revocation of his operator's license.

These allegations are a far cry from a claimed invasion of specifically designated constitutional rights.

We are satisfied trial court erred to the extent its conclusion is based upon a theoretical violation of any constitutional mandate.

■ VII. Another question to be resolved centers upon the matter of statutory right to make or have a telephone call made upon arrest or restraint of liberty.

Section 755.17, Code, 1966, provides in part: "Any peace officer or other person having custody of any person arrested or restrained of his liberty for any reason whatever, shall, before preliminary hearing and arraignment, except in cases of imminent danger of escape, permit that person, without unnecessary delay after arrival at the place of detention, to call, consult, and see a member of his or her family or an attorney of his or her choice."

Briefly, the record fails to disclose Buda was at any time denied permission to make or have a phone call made for him. In fact that subject was not at any time mentioned by him on arrest, or at the police station.

On this subject see State v. Shephard, 255 Iowa 1218, 1229, 124 N.W.2d 712; State v. Tornquist, 254 Iowa 1135, 1149-1152, 120 N.W.2d 483; and State v. Cameron, 254 Iowa 505, 509–511, 117 N.W.2d 816.

We now conclude trial court erred in holding there was here a violation of Code section 755.17, or of any existing related constitutional standards, which could effectively nullify the previously issued license revocation order.

■ VIII. Finally, plaintiff claims he did not understand refusal to permit taking of a specimen for chemical analysis would result in revocation of his operator's license. We find this contention to be without substance or merit.

Any holding to the contrary would, in effect, serve to defeat the self-evident intent, purpose and policy of chapter 321B, Code of Iowa.

On this subject Buda testified, on appeal to trial court:

"Q. Do you recall at any time being told by Officer Schneider or the other officer in the event you refused to give his blood test or the urine test that was requested your license would be suspended or that you would lose it for at least 120 days? A. I didn't understand nothing about that. I was humiliated by those two officers and I just didn't know that it would make any difference really because they said I was drunk and if I am drunk I don't have to give any blood test or anything.

"Q. You had no understanding this refusal meant your license would be taken? A. No, sir."

However, on cross-examination plaintiff admitted he at one time held a California driver's license and secured one on arrival in Iowa; that a written examination was probably taken relative to both licenses, the words "suspension" or "revocation" having been most likely used in connection with each test taken.

And Officer Schneider's undisputed testimony discloses Buda was told four or five times if he refused to give a blood or urine specimen he would *lose* his driver's license for 120 days, the words "suspension" or "revocation" not having been used.

Actually plaintiff failed to establish his claimed lack of understanding by the requisite degree of proof.

Furthermore, it is to us evident plaintiff did refuse to allow any such specimen to be taken. On this point the record discloses Buda testified in part:

"I recall being asked to take a blood and urine test.

"Q. And what did you say when they asked? A. They said I was drunk. I said if I am drunk what do you want my test for?

"Q. What did you mean by that, Mr. Buda? A. I meant they accused me of being drunk, so if I am drunk what is the use of taking a blood test? That is all I meant. If you know I am drunk you don't need my blood test."

We deem these statements the equivalent of a refusal. In other words, total failure on the part of Buda to cooperate in the matter was, under the circumstances, tantamount to a declination.

To the extent trial court relied on plaintiff's claimed ignorance of results attendant upon refusal to permit the taking of a specimen for chemical analysis, error is apparent.

IX. Trial court's sincerity is not questioned. However, the judgment vacating commissioner's order revoking Buda's license to operate a motor vehicle is so tainted with error it cannot stand.

There is no alternative but to reverse and remand this case to trial court with direction to set aside judgment entered, and to enter judgment in harmony herewith.

Reversed and remanded for order and judgment consistent with this opinion.

All Justices concur, except BECKER, J., who takes no part.