**Duane PEEL et al., Appellants,**

v.

**Charles BURK et al., Appellees.**

**No. 54815.**

Supreme Court of Iowa.

May 11, 1972.

Dailey, Dailey, Ruther & Bauer, Burlington, for appellants.

Napier, Napier & Wright, Fort Madison, for appellees.

RAWLINGS, Justice.

Defendants (proponents) initiated proceedings pursuant to The Code 1966, Chapter 465, for establishment of an open agricultural drainage ditch across lands of others. Plaintiffs (objectors) resisted. County board of supervisors (board) denied request and proponents appealed to district court. From order there entered overruling objectors' motion to dismiss, they take permissive appeal.

Errors here asserted are, trial court erred in failing to hold (1) chapter 465 permits deprivation of property without due process of law and therefore violates U.S.Const., amend. 14; (2) chapter 465 permits the taking of private property without just compensation being paid, thus violating the United States and Iowa Constitutions; (3) proponents failed to secure a permit from the Iowa Natural Resources Council as required by Code chapter 455A.

■ I. The legislature may enact any law desired providing it is not clearly prohibited by some provision of the federal or state constitutions. Every reasonable presumption must be called upon to support a legislative enactment. Furthermore, a challenging party must negate every reasonable basis upon which an act can be upheld. Also, if constitutionality of legislation is merely doubtful or fairly debatable the courts will not interfere. Neither is it for the judiciary to determine whether legislative acts are wise or unwise. Briefly stated these objectors assumed a heavy burden. See Iron Workers Local No. 67 v. Hart, 191 N.W.2d 758, 771 (Iowa); Farrell v. State Board of Regents, 179 N.W.2d 533, 537–538 (Iowa); Abolt v. City of Fort Madison, 252 Iowa 626, 634, 108 N.W.2d 263.

■ II. As noted above objectors first take the position chapter 465 unconstitutionally deprives them of due process of the law in that it permits the taking of their property for private use.

An examination of the record discloses objectors never previously voiced any such challenge by their motion to dismiss, or otherwise.

In that regard this court has consistently held matters not raised in trial court, including constitutional questions, cannot be effectively asserted the first time on appeal. See State for Use of City of Dubuque v. Conrad, 191 N.W.2d 648, 649 (Iowa); Katko v. Briney, 183 N.W.2d 657, 662 (Iowa); Continental Ill. Nat. Bank and Trust Co. v. Security State Bank, 182 N.W.2d 116, 119 (Iowa).

■ And, courts will not ordinarily initiate an inquiry regarding constitutional issues. See Buda v. Fulton, 261 Iowa 981, 989, 157 N.W.2d 336.

We do not now entertain this belatedly asserted issue. Further discussion will serve no useful purpose.

■ III. Objectors also contend chapter 465, in effect, permits the taking of private property without just compensation in violation of U.S.Const., amends. 5 and 14, and Iowa Const., § 18, art. I.

In this regard they take the position, absence of specific provision in the act for payment of their (condemnees) trial preparation expenses, and fees for attorneys and expert witnesses, denies them the compensation to which they are constitutionally entitled.

Argument advanced in support of that stand is devoid of merit under our prior pronouncements to which we now adhere. See In re Legislative Districting of General Assembly, 193 N.W.2d 784, 791–792 (Iowa); City of Ottumwa v. Taylor, 251 Iowa 618, 621–626, 102 N.W.2d 376; Nichol v. Neighbour, 202 Iowa 406, 210 N.W. 281. See also Kirby Lumber Corporation v. State of Louisiana, 293 F.2d 82, 87 (5th Cir.); State v. McDonald, 88 Ariz. 1, 352 P.2d 343, 351; Frustuck v. City of Fairfax, 230 C.A.2d 412, 41 Cal.Rptr. 56, 59; 30 C.J.S. Eminent Domain §§ 381, 386; Annot. 18 A.L.R.2d 1225, 1229. See also 4A Nichols on Eminent Domain, § 14.249 [3], [4] (3rd ed.).

The issue here raised must be and is resolved adverse to objectors.

■ In event a change in the law regarding the instant subject matter be deemed advisable we believe it should and might well be effected by the general assembly, not by judicial fiat.

■ IV. Finally, in support of a reversal, objectors assert proponents fatally failed to show the securing of a Code chapter 455A permit from the Iowa Natural Resources Council for construction of the requested open agricultural drain.

We find no statute or rule which directs or infers a chapter 465 applicant must allege he has obtained a chapter 455A per-

mit. See Code §§ 455A.18, 455A.25, 455A.-27.

Affirmed.

All Justices concur, except REYNOLD-SON, J., who dissents, and McCORMICK, J., who takes no part.

REYNOLDSON, Justice (dissenting).

This case involves a private condemnation for defendants' proposed drainage ditch (35 feet wide, 11 feet deep) through properties of 14 landowners, the purpose being to drain defendants' land.

The genesis of chapter 465, The Code, purported to grant the condemnation right defendants seek to invoke, dates back almost 100 years. The then public need to put agricultural land in production and to drain marshes has given way to a public policy promoting the removal of land from production and the preservation of natural environment as ecologically sound.

I doubt the record before us discloses the project's *public purpose* required to pass constitutional muster under the due process clause, Amendment 14, United States Constitution. A taking for a private use is a deprivation of property without due process of law. Riden v. Philadelphia, B. & W. R. Co., 182 Md. 336, 35 A.2d 99 (1943). Statutes which allow any private proprietor to drain his own land by constructing a ditch through the lands of others, paying just compensation, are unconstitutional according to all recognized standards and are usually so held. 26 Am.Jur.2d, Eminent Domain § 44, pp. 699–700. Similar provisions found in a state constitution have been declared void as violative of the due process clause of the federal constitution. In re Tuthill, 163 N.Y. 133, 57 N.E. 303 (1900).

But the majority holds this issue was never properly raised below by plaintiff landowners. While I entertain grave doubts regarding that conclusion, I move to an issue of equal importance—just compensation—which was unquestionably before trial court. If private property cannot be taken for a *public* purpose without just compensation surely it cannot be taken for a *private* purpose without full and adequate compensation. A further consideration of constitutional provisions is required to bring this issue into sharp focus.

The protection of the individual's right to property occupies a polestar position in both the federal and state constitutions. In the United States Constitution, Amendment 5, it is coupled with the fundamental right of due process, " * * * nor be deprived of life, liberty, or *property*, without due process of law; *nor shall private property be taken for public use, without just compensation.*" The due process protection of one's rights in property is also extended by Amendment 14 of the same constitution, " * * * nor shall any State deprive any person of life, liberty, or *property*, without due process of law * * *."

Of significance also is the following from the Iowa Constitution, article I (Bill of Rights) :

"[Rights of *persons*], Section 1. All men * * * have certain inalienable rights—among which are * * * *acquiring, possessing and protecting property* * * *."

Grounded in the Iowa Constitution Bill of Rights, article I, Section 18 is the mandate that, "Private property shall not be taken for public use without *just compensation first being made,* * * *." (Emphasis added in both above paragraphs)

In the second quarter of this century we have seen the constitutionally guaranteed right of persons to own and enjoy property invaded, first in an era of conflict with burgeoning and popular public development, and more recently, in the misleading dichotomy of "personal rights" vis-a-vis "property rights." Property, of course, has no "rights"; people have rights in and to their property just as they enjoy other personal rights. This concept of a constitu-

tionally guaranteed personal right to own property is one of the basic distinctions between our concept of government and the repressive philosophy of governments based on state ownership of all property.

Here, in division III of their opinion, my brothers tell plaintiffs the "just compensation" for their privately condemned property must be reduced by the fees of their attorney and of their necessary and vital expert witnesses in the fields of engineering and real estate appraisal. Unlike some states, in Iowa (in chapter 465 as in all condemnation proceedings) we cast upon the condemnee the role of "plaintiff" thus effectively throwing upon him the burden of pleading and proving his damages and the amount of the just compensation to which he is entitled. Section 465.12, The Code; rule 344(f) (5), Rules of Civil Procedure. Defendant condemnors' brief concedes plaintiffs must hire an engineer to determine the effect of the ditch on plaintiffs' property: "As to whether such a ditch will impose any burden upon the complaining landowners *is a question for expert testimony* * * *." (Emphasis added)

We should not profess ignorance of the condemnation process. While we have said the landowner is qualified to testify regarding his own damages, we know by reviewing these trials that when he goes to the courtroom—perhaps for the first and only time in his life—he is confronted by expert appraisers for the condemnor. Some are full-time employees of the condemnor, others work almost full time for condemning authorities. Their credentials and qualifications are long and impressive. The inexperienced lay condemnee cannot defend against the preparation and elaborate appraisals of such experts. It offends all reason, logic and justice to say he must either face this array of able, professionally-prepared evidence, or pay for his own experts out of the "just compensation" guaranteed him by the federal and state constitutions.

Nor can it be denied that these landowners, required by statute to plead and prove their own damages, must employ and pay an attorney. The record discloses condemnors were represented by counsel from the outset. We should judicially note condemnation is a specialized, complex field of the law. Plaintiffs' fees for legal services will consume a significant share of their award.

It is illogical to contend, as does the majority, that costs in a condemnation proceeding should be treated as costs in any other action. This is no ordinary lawsuit. We are here breathing life into a constitutional right—the right to possess and protect property. We are further charged with enforcing a constitutional mandate that such property shall not be taken without payment of just compensation. Every other justiciable controversy of a civil nature arises out of some prior relationship or contact between the parties. In the action ex delicto, some allegedly wrongful conduct of defendant has injured plaintiff, out of which arises plaintiff's right of action. In the ex contractu action, the parties have had a contractual relationship. But in the condemnation proceeding the condemnee (who is actually the defendant although in this state forced to assume plaintiff's burdens) has admittedly done no wrong, broken no promises and committed no negligence. He has only exercised his constitutional right to possess property—which in the condemnation situation, unfortunately, is property coveted by another.

The Supreme Court of Florida, in Dade County v. Brigham, 47 So.2d 602, 604–605 (Fla.1950), aptly said,

"Since the owner of private property sought to be condemned is forced into court by one to whom he owes no obligation, it cannot be said that he has received 'just compensation' for his property if he is compelled to pay out of his own pocket the expenses of establishing the fair value of the property, which ex-

penses in some cases could conceivably exceed such value."

See also State, Department of Highways v. Salemi, 185 So.2d 536 (La.App.1966); Stolze v. Milwaukee & L. W. R. Co., 113 Wis. 44, 88 N.W. 919 (1902).

Under majority's rule, acquisition agents approach the landowner with the cards stacked in condemnor's favor. They know and he knows if he refuses the offer and goes to court his net recovery, after payment of his attorney and expert witness fees, will likely be much less than the fair market value of his property. It is asking too much of human nature not to expect such agents to offer less than fair market value. Allowance of such fees, in a reasonable amount and where the landowner has not litigated unreasonably (measured by whether an increase over offer is obtained), would not encourage, but prevent litigation by prompting a more reasonable initial offer.

One may be justifiably concerned with the cost to the public if witness fees are allowed as part of the costs or part of just compensation. The simple answer is, a constitutional right may not be denied because enforcement would be too burdensome or costly.

Majority concludes division III of its opinion by asserting the legislature should change the rule, not this court. The legislature has no authority to abolish or modify the constitutional right of the owner to receive just compensation for his condemned property. This court, not the legislature, is empowered to interpret the constitution. Defining the elements of "just compensation" is a judicial, not a legislative function. Abdication of this duty will only continue the unjust and indefensible decision of this court in City of Ottumwa v. Taylor, 251 Iowa 618, 102 N.W.2d 376 (1960), which should now be overruled.

Some of the reasoning advanced in this dissent will have no application to Code chapter 472 condemnations, where under limited conditions attorney fees are recoverable. It is fully applicable to this chapter 465 case, where neither witness nor attorney fees are recoverable.

I would not strike down the statute as unconstitutional. It makes no attempt to deny recovery for fees. It merely omits a provision for such payment, a provision which should be supplied, under the constitutional mandate, by this court. I would remand with instructions to trial court to allow reasonable fees, reasonably incurred by plaintiffs in assuming the burden (of pleading and proving their damages) imposed by this chapter. Because the majority denies these elements of just compensation, following *Taylor,* I must dissent.