Robert Gene CARROLL, Appellee,

v.

**IOWA DEPARTMENT OF PUBLIC SAFETY, DRIVER'S LICENSE DIVISION, State of Iowa, Appellant.**

No. 2-56883.

Supreme Court of Iowa.

June 25, 1975.

Richard C. Turner, Atty. Gen., and Peter E. Voorhees, Asst. Atty. Gen., for appellant.

Noran L. Davis, Council Bluffs, for appellee.

Submitted to MOORE, C. J., and RAWLINGS, LeGRAND, UHLENHOPP and REYNOLDSON, JJ.

UHLENHOPP, Justice.

This appeal involves a proceeding to revoke a driver's license under the implied consent law, chapter 321B, Code 1973 (all references are to that Code).

State Trooper Kenneth R. Heimgartner arrested plaintiff Robert Gene Carroll for operating a motor vehicle while under the influence of intoxicants. Plaintiff refused to take a blood or breath test or to sign the written refusal to take them. Subsequently, the Iowa Department of Public Safety revoked plaintiff's driver's license for 180 days, under the implied consent law. § 321B.7.

Plaintiff requested an administrative hearing under § 321B.8, which provides that the hearing "shall cover the issues of whether a peace officer had reasonable grounds to believe the person to have been operating a motor vehicle upon a public highway of this state while under the influence of an alcoholic beverage, whether the person was placed under arrest and whether he refused to submit to the test or tests."

Sgt. P. Roby, an agent of the Commissioner of Public Safety, conducted the hearing and taped the proceedings. Trooper Heimgartner testified for the Department. His testimony in part, from the typist's transcription, follows:

Q. (Sgt. Roby.) Would you tell in your own words from the time that you saw this vehicle driven by Mr. Carroll until after the Implied Consent was invoked? A. (Trooper Heimgartner.) Well I.

Q. [Can't make out.] A. Well I was westbound on 83 approximately a mile and a half east of the junction of 191 and 83 when I observed the vehicle which was eastbound as he was going around the curve, he did go across the center line and then did pass onto the shoulder at which time I slowed down, pulled to the shoulder of the road to possibly avoid him striking me or vice versa. This was the case and after we met each other I turned around and proceeded to pursue the vehicle. As I approached the rear of the vehicle I also observed the vehicle go across the center line several times and also onto the shoulder of the road a few times. Now as far as how many times, I did not count them, but there were a few times there that they the vehicle did cross the center line, also onto the shoulder, and at which time I did turn my red lights on and to attract the driver's attention a bit more, I did flash my head lights from bright to dim. It seemed as if the driver of the vehicle did not see the red lights or the flashing of the head lights and continued to drive on a little bit farther. When he did notice them he slowed down considerably to a speed of five miles an hour before he proceeded to go onto the shoulder of the road. I approached the driver and asked him to step out of the car for me and also to shut his vehicle off which he did with a little hesitation. He looked at me as if to ask why he should shut it off, but he did not ask the question. As he got out of the car he did lose balance to a certain extent to, well, he caught his balance on the side of the car and proceeded to walk back to the back of my car or the side of my car at which time I went around and unlocked the door. As he was reaching for the door latch, it seemed as if he lost his balance again and staggered down into the ditch somewhat. In fact, he did fall down. When he got back up he did get into my car as I asked. I got on the driver's side and proceeded to ask him where his, for his driver's license and he got the driver's license out for me, or the billfold out, and then he put it back into his pocket saying I was not going to take his driver's license, that I did not need his driver's license. . . .

Q. Now before we go any further, Trooper Heimgartner, did you arrest this man? A. Yes, I did. . . .

Q. Yes, proceed. A. And at 10:35 P.M., as noted on the form here, I did request a chemical test of blood, and at which time he did refuse. Shortly thereafter I asked for the chemical test of breath, and again he refused to give the chemical test of breath. And on both occasions, he did refuse to sign the form stating that he refused. Then I proceeded to inform him that his driving privileges would be suspended, and by doing this, I did read the form to him. I advised him what the situation was as far as suspension for at least 120 days or no more than one year. He said he did understand the charge and understand he would lose his license but again he did refuse to sign the Implied Consent form. . . .

Q. I see, now was the man, was this blood and breath test request within a two hour period after the arrest? A. Yes, it was.

Q. The man was arrested at approximately what time? A. At approximately 10:25 P.M. . . .

Q. And the man to the best of your opinion was definitely under the influence of an alcoholic beverage? A. Yes, he was. . . .

Plaintiff introduced no evidence.

On the basis of the evidence introduced, Sgt. Roby upheld the revocation.

Plaintiff thereupon appealed to district court under § 321B.9. The trial court heard the case upon the transcript from the Department of Public Safety which included (a) the testimony before Sgt. Roby, certified by the Department as true and correct, and (b) the Department documents: implied consent form, notice of revocation, letter from plaintiff's attorney asking for the administrative hearing, Sgt. Roby's report upholding the revocation, letter from plaintiff's attorney concerning appeal to district court, and intra-departmental request for the tape of the hearing. Neither side introduced additional evidence.

The trial court vacated Sgt. Roby's order of revocation, stating that "the Court being fully advised in the premises and having reviewed the transcript filed by the Iowa Department of Public Safety; the Court having personally presided at the trial of the plaintiff on the charge of OMVUI; the Court being personally familiar with all testimony at said trial and being personally familiar with the jury verdict of 'not guilty' being rendered therein; and having fully considered the matter of said appeal, finds that said decision of the Commissioner of Public Safety, by his representative, on June 29, 1973, should be vacated."

The Department thereupon appealed to this court under § 321B.9.

■ To get the parties' contentions in perspective, we review the applicable prin-ciples from our previous decisions. The criminal, judicial prosecution for driving while under the influence of intoxicants and the civil, administrative proceeding for license revocation are separate and distinct; the outcome of the criminal prosecution does not affect the civil proceeding. Severson v. Sueppel, 260 Iowa 1169, 152 N.W.2d 281. When a motorist appeals to district court from a license revocation in the administrative proceeding, the case is tried anew upon the transcript from the Department of Public Safety and such additional evidence as the parties may introduce; the burden of proof rests on the motorist; to prevail, he must establish his case by a preponderance of the evidence; and in the event of further appeal to this court, we review the case de novo. Buda v. Fulton, 261 Iowa 981, 157 N.W.2d 336.

The Department insists in the present appeal that under the evidence and the rules we have stated, we should uphold the revocation. The Department asserts that the trial court considered matters not in the record and also that Sgt. Roby did not deny plaintiff his right of cross-examination.

■ I. The only evidence before the trial court, in addition to the Department documents, was Trooper Heimgartner's testimony. That testimony showed, as Sgt. Roby found, that Heimgartner had reasonable grounds to believe plaintiff was driving while under the influence of intoxicants, that Heimgartner arrested plaintiff, and that plaintiff refused blood and breath tests. The trial court should therefore have upheld the revocation.

On appeal to this court, the same situation exists—we have the same record. The revocation should therefore stand.

■ II. The parties disagree as to whether Sgt. Roby allowed plaintiff's attorney to cross-examine Trooper Heimgartner. The proceedings show that Sgt. Roby questioned the relevancy of some interrogatories the attorney propounded, but that Roby told the attorney he could ask his interroga-

tories and the attorney did ask them until he eventually stated he had no more to ask. In any event, on the de novo appeal in district court, plaintiff's attorney could have asked all the proper questions he chose. Buda v. Fulton, supra.

Plaintiff also argues that the transcription of testimony before Sgt. Roby is incomplete. The Department certified the transcription as true and correct. The only incomplete portions we can discover in the transcription are: part of a statement by Sgt. Roby to Mr. Davis early in the proceedings concerning plaintiff's unwillingness to sign the refusal to take tests, where the typist wrote, "Can't make out"; a question by Sgt. Roby near the beginning of Trooper Heimgartner's testimony, where the typist again wrote, "Can't make out"; and a statement by Mr. Davis to Sgt. Roby during the proceedings, where the typist wrote the same thing. These do not appear to involve omissions of testimony which would change the result. Anyway, in his de novo appeal in district court plaintiff could have shown any facts omitted, but he introduced no evidence at all.

We uphold the revocation. The proceeding is therefore remanded to the Department for revocation of plaintiff's license for 180 days.

Reversed and remanded.